STATE OF IOWA, Appellee, v. C. C. GIBSON, Appellant.

**EVIDENCE:** **Opinion Evidence—Nonexpert Subject-matter.** The term 1　"internal curative medicine" is not the subject of expert medical testimony as to its meaning.

**CRIMINAL LAW:** **Trial—Argument—Misconduct.** On a charge that 2　an osteopath was prescribing internal curative medicines, it is not misconduct for the county attorney, in argument, to state that "the defendant has access to the records and a right to introduce evidence to show that he was practicing osteopathy, and not medicine."

Headnote 1. 16 C. J. p. 749 (1926 Anno.) Headnote 2. 16 C. J. p. 903.

*Appeal from Cass District Court.*—EARL PETERS, Judge.

JANUARY 13, 1925.

THE defendant was convicted of the crime of practicing medicine without a license. From the judgment entered on the verdict, he appeals.—*Affirmed.*

*Swan, Clovis, Swan & Martin,* for appellant.

*Ben J. Gibson,* Attorney-general, *S. S. Faville,* Assistant Attorney-general, and *R. W. Cockshoot,* County Attorney, for appellee.

DE GRAFF, J.—The State concedes that defendant is licensed to practice osteopathy. The defendant does not claim that he is licensed to practice medicine. The statute defines osteopathy as follows:

"The word 'osteopathy' as used in this act is the name of that system of the healing art which places the chief emphasis on the structural integrity of the body mechanism as being the most important factor for maintaining the organism in health." Section 3, Chapter 77, Acts of the Thirty-ninth General Assembly.

Section 15 of said chapter prohibits osteopathic physicians "to prescribe or give internal curative medicines." The court, in its charge to the jury, defined the terms "medicine" and "internal curative medicine" in these words:

" 'Medicine,' as the word is herein used, is defined as any substance or preparation used in treating disease. An 'internal curative medicine,' as the term is herein used, is defined as a medicine that is taken inwardly for the purpose of curing or tending to cure any disease."

Appellant first complains of the rulings of the court in sustaining objections to the testimony of expert witnesses as to the technical meaning of "internal curative medicine." Is the term technical? Words and phrases, as a general rule, are given their usual and ordinary meaning. It is apparent that the words "internal" and "medicine" do not import a technical meaning, and it is also clear that the legislature intended that these words

1. EVIDENCE: opinion evidence: non-expert subject-matter.

should be construed according to their usual and ordinary meaning.  Section 63, Code of 1924.  The word "curative" is defined by Webster as:

"Relating to, or employed in, the cure of diseases; tending to cure.  A remedy."

The word "cure" is defined by the same author as:

"Act of healing, or state of being healed; restoration to health from disease, or to soundness after injury.  Means of the removal of disease or evil; that which heals; a remedy; a restorative."

Internal medicine is, therefore, some substance or preparation administered internally for the cure, removal, or healing of some disease or condition demanding medical treatment.

The evidence in this case established the fact that the defendant wrote prescriptions for patients under his care and treatment, and that the prescriptions were filled by a pharmacist.  It is also shown that the drugs or compounds were administered internally to some of his patients.  Some of the ingredients administered were: creosote, tincture of Cinchona compound, strychnine, sodium salicylate, simple syrup, lime water, and liquid parapectin.  The medical properties of the drugs in question were stated by physicians called as witnesses, but we deem it unnecessary to recite their testimony.  Sufficient to state that it is shown that these medicines and drugs were taken internally, and for the purpose of effecting a cure for a particular ailment.

The question of fact was not whether the medicine prescribed was the best, or one most likely to effect a cure, or whether it would, in fact, cure the disease or affection for which it was given.  The question to be determined on the fact side was whether the defendant prescribed and administered internal curative medicine.  The evident purpose of the legislature was to prohibit osteopathic physicians and surgeons from practicing medicine or professing to heal in any other way than by the method recognized and prescribed by their school, and as defined by the statute.

The definitions given by the court are in harmony with the statute.  Much reliance is placed by counsel upon a decision by the Kentucky Court of Appeals, *Katzman v. Commonwealth,* 140

Ky. 124 (130 S. W. 990), in which that court sustained the admission of expert testimony as to the effect of narcotics upon the human system, in rebuttal of testimony introduced on behalf of the defendant that the sale of opium for smoking purposes was for a legitimate purpose. The statute of Kentucky prohibited the sale at retail of opium and other poisons, unless the seller satisfied himself that "such poison is to be used for legitimate purposes." There is no analogy between the holding in the Kentucky case and the rule adopted by the trial court in the instant case. The Kentucky court permitted witnesses to testify to the effect of opium upon the health and morals of the user; and from this testimony the inference naturally followed that the sale thereof for smoking purposes was not legitimate, within the meaning of the statute.

We conclude that the testimony of the experts offered by the appellant was properly excluded by the trial court.

It is further contended that the county attorney, in his argument to the jury, violated the statute, in referring to the failure of the defendant to take the witness stand in his own 2. CRIMINAL LAW: behalf. The record does not refer to the failure trial: argu- of the defendant to testify in his own behalf; ment: miscon- duct. and to hold that such an inference arises from the language used, would require a strained construction. The county attorney stated that the defendant had access to the records, and a right to introduce evidence to show that he was practicing osteopathy, and not medicine. The testimony of the State that appellant prescribed medicine for certain patients to be taken internally was not denied. The county attorney violated no statutory prohibition when he called the attention of the jury to the state of the record. In our opinion, the statute was not violated.

Other points argued by counsel find disposition in the matters to which we have heretofore referred. We find no error, and the judgment of the trial court is—*Affirmed.*

STEVENS, ARTHUR, and VERMILION, JJ., concur.

FAVILLE, C. J., not participating.