The State, *ex rel.*, v. Eustace.

No. 26,054.

THE STATE OF KANSAS, ex rel. J. F. FINCH, County Attorney, *Appellant*, v. HARRY E. EUSTACE, *Appellee*.

SYLLABUS BY THE COURT.

OPTOMETRY—*An Osteopath Not Entitled to Practice Optometry Without Registration as an Optometrist*. A registered osteopath is not entitled to practice optometry in this state without registration as an optometrist in the manner required by law.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion filed February 7, 1925. Reversed.

*Charles B. Griffith*, attorney-general, *J. F. Finch*, county attorney, *J. V. Humphrey*, and *A. S. Humphrey*, both of Junction City, for the appellant.

*Ira N. Tice*, of Beloit, *Lee Monroe, Guy L. Hursh*, and *C. M. Monroe*, all of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to obtain a judgment declaring that those licensed to practice osteopathy under the laws of this state cannot under such license practice optometry without a certificate of registration as an optometrist. Judgment was rendered for the defendant, and the plaintiff appeals.

The action was tried on an agreed statement of facts which showed than on October 15, 1912, the defendant obtained from the State Medical Board of Examination and Registration a certificate authorizing him to practice osteopathy in the state of Kansas. The answer alleged that—

"The said defendant since the issuance of said certificate has been practicing at Beloit, Kan., as a doctor of osteopathy, and that he has practiced as a doctor of osteopathy ever since the year 1912; that he has also practiced as optician or doctor of optics under the provisions of the laws of the state of Kansas as applied to said license. . . . That the science of optometry is included as a portion of the science of osteopathy and is a subdivision of the science of osteopathy. That optometry was taught fully and completely in the schools of osteopathy, and when he graduated as a doctor of osteopathy his graduation included that of doctor of optics, and that his license as a doctor of osteopathy gives him the right to practice optometry the same as any other branch of osteopathy."

The determination of this controversy depends on the construction of the statutes governing the practice of osteopathy and of optometry.

Sections 65-1201 to 65-1206, inclusive, provide for the examination and registration of those who desire to practice osteopathy in this state, but osteopathy is not defined in the statute. We must look to the law books for the definition of the term. 3 Words and Phrases, 2d series, 803, defines osteopathy as "a method of treating diseases of the human body without the use of drugs, by means of manipulation applied to various nerve centers, chiefly those along the spine, with a view to inducing free circulation of the blood and lymph, and an equal distribution of the nerve forces. Special attention is given to the readjustment of any bones, muscles or ligaments not in the normal position. It is that method of the healing art accomplished by a system of rubbing or kneading the body."

Section 65-1501 of the Revised Statutes defines the practice of optometry as follows:

"The examination of the human eye without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms, or ocular exercises and their adaptation for the aid thereof."

Section 65-1502 states who are deemed practitioners of optometry. Section 65-1503 provides for the registration of optometrists. Section 65-1504 defines offenses under the act concerning optometry. The next section gives the qualifications of practitioners. The next two sections prescribe when and the manner in which certificates may be revoked.

Section 65-1508 reads:

"Nothing in this act shall be construed to prevent regular physicians and surgeons who are registered with the state medical board, as such, from testing eyes and fitting glasses."

The remaining sections of the act are immaterial so far as this case is concerned.

The defendant contends that under the last section quoted he has the right to practice optometry under his certificate of registration as an osteopath. He supports this contention by arguing that the practice of osteopathy is a part of practicing the healing art, and that so far as the practice of that art is concerned, the statutes providing for the registration of optometrists make no distinction between those who practice the healing art by the administration of medicines or by surgery and those who practice that art according to the science known as osteopathy. The defendant cites several cases from the courts of other states. They have been ex-

amined, but this court is unable to get any assistance from them in the determination of the question under consideration.

Section 65-1001 of the Revised Statutes, in part, reads:

"All persons intending to practice medicine or surgery after the passage of this act, and all persons who shall not have complied with section 2 of this act, shall apply to said board at any regular meeting, or at any other time or place as may be designated by the board for a license."

Section 65-1005 of the Revised Statutes, in part, reads:

"Any person shall be regarded as practicing medicine and surgery within the meaning of this act who shall prescribe, or who shall recommend for a fee, for like use, any drug or medicine, or perform any surgical operation of whatsoever nature for the cure or relief of any wounds, fracture or bodily injury, infirmity or disease of another person."

Webster defines the term physician as "a person skilled in physic or the art of healing." The term surgery is defined by the same writer as "the art or practice of healing by manual operation; that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities, or injuries."

Osteopathy when practiced by a physician or surgeon, as is defined in section 65-1005, may be and probably is a part of the art or science of healing, but the practice of osteopathy, while it may be a part of the art of healing, is not comprehended within the term "practicing medicine," nor within the term "surgical operation," as used in section 65-1005 of the Revised Statutes. Section 65-1508 of the Revised Statutes, providing that nothing in the optometry act shall be construed as preventing regular registered physicians and surgeons from practicing optometry, does not include those who are registered to practice osteopathy. This conclusion is supported by *In re Rust*, 181 Cal. 73, where the supreme court of that state said:

"A person licensed to practice osteopathy is not a physician within the provision of section 10 of the act regulating the practice of optometry (Stats. 1913, p. 1093), which declares the provisions of the act shall not be construed to prevent duly licensed physicians and surgeons from treating or fitting glasses to the human eye, since the act of 1913 regulating the practice of medicine and surgery recognizes a distinction between the two professions in providing for the issuance of separate and distinct licenses, which distinction was also recognized in prior repealed acts." (See, also, *State v. Rust*, 119 Wash. 480.)

It follows that the defendant, under his certificate of registration as an osteopath, cannot practice optometry as it is defined in the statutes of this state.

The State, *ex rel.*, v. Eustace.

The judgment is reversed, and judgment is entered for the plaintiff.

DAWSON, J. (dissenting): It seems to me that the statute which controls this case is the act of 1913, chapter 290, R. S. 65-1201, *et seq.*, which authorizes the licensing of osteopathic physicians. Since 1915 the qualifications therein prescribed for such professional persons have been considerable. A preliminary education equivalent to that of a high school is required before the prospective licentiate may commence his professional studies, and he is then required to complete a regular course of study, of four years of eight months each in each separate year, in an osteopathic college of good repute, and—

"65-1201. . . . The board shall subject all applicants to a practical examination, as to their qualifications for the practice of osteopathy, in writing, in the subjects of anatomy, physiology, physiological chemistry and toxicology, pathology, diagnosis, hygiene, obstetrics and gynecology, surgery, *principles and practice of osteopathy,* and such other subjects as the board may require. This may be supplemented by other practical examinations such as the board may by rule determine. If such examination is passed in a manner satisfactory to the board, then the board shall issue to said applicant a certificate granting him *the right to practice osteopathy* in the state of Kansas, *as taught and practiced in the legally incorporated colleges of osteopathy of good repute.* . . .

"65-1202. The words, 'osteopathic school or college of good repute,' wherever used in this act, shall be deemed and taken to include only such schools or college of osteopathy as are legally incorporated, and which prescribe a course of study covering the time provided for under the provisions of this act, and which shall instruct in all the branches of study in which examinations are required for license under the provisions of this act, and shall require the personal attendance of the student throughout the course, and the requirements of which shall be in no particular less than those prescribed by the American Osteopathic Association."

The agreed statement of facts, quoted in the main opinion, concedes that optometry is fully and completely taught in schools of osteopathy. I therefore cannot see why vexatious restrictions and annoying limitations should be read into the broad statutory language granting osteopathic physicians "the right to practice osteopathy in the state of Kansas, as taught and practiced in the legally incorporated colleges of osteopathy of good repute." Since optometry is thoroughly taught and practiced in colleges of osteopathy of good repute, and the candidate for a license is required to pass a satisfactory examination in the principles and practice

of osteopathy, and the licentiate is granted the right to practice osteopathy as taught and practiced in colleges of osteopathy of good repute, it seems to me that the judgment of the trial court was correct and should be affirmed.

HARVEY, and HOPKINS, JJ., join in this dissent.