STATE OF IOWA, Appellee, v. GENEVIEVE G. STODDARD, Appellant.

No. 41518.

NOVEMBER 22, 1932.

REHEARING DENIED DECEMBER 15, 1932.

Sampson & Dillon, for appellant.

John Fletcher, Attorney-general, and Gerald O. Blake, Assistant Attorney-general, for appellee.

KINDIG, J.—The defendant-appellant, Dr. Genevieve G. Stod-

dard, is an osteopath duly licensed to practice that profession in the state of Iowa. She, in April, 1931, was engaged at Waukon in the practice of osteopathy, and it is charged by the State, in its petition for an injunction, that she there, in addition to the practice of that profession, engaged in the practice of medicine. Such practice of medicine by the appellant, an osteopath, the state declares, was illegal because an osteopath, as such, has no right to practice medicine. It is contended by the state that the appellant practiced medicine at the time and place in question by prescribing to her patients internal curative medicines.

As above indicated, the state, on July 6, 1931, commenced the proceedings here involved to enjoin the appellant from thus engaging in the practice of medicine, as distinguished from the practice of osteopathy. A motion to dismiss the petition was filed by the appellant. This motion was overruled by the district court. Thereupon the appellant answered. In her answer the appellant denied that she was illegally practicing medicine. Her practice, the appellant answered, has at all times been within the rights and privileges granted to her as an osteopath, under the laws of Iowa.

After a trial on the merits, an injunction was issued by the district court as prayed by the state, and the appellant appeals.

I. According to the record, appellant in April, 1931, at Waukon, treated T. H. Ahearn for "stomach trouble and blood poisoning." That treatment consisted of: First, osteopathic manipulations; and, second, the prescription for an internal medicine consisting of a compound containing sodium bicarbonate, bismuth subcarbonate, and magnesium oxide. This prescription made by the appellant for her patient Mr. Ahearn was in writing. Following the receipt thereof, Ahearn presented it at a drug store in Waukon where it was filled, and after he obtained the medicine from the druggist he took the compound internally, according to appellant's directions. Furthermore the appellant furnished her patient Ahearn with "a little box of tablets," and impliedly suggested that he use the tablets.

Mr. Lyman also called upon appellant at her office in Waukon in April, 1931, and complained of stomach trouble. Accordingly the appellant gave a written prescription to this patient describing the same drugs as were prescribed for the other patient Mr. Ahearn. Lyman, as did Ahearn, went to a drug store and had the prescription filled. The appellant charged Lyman for the prescription. While

she may not have charged Ahearn specifically for the prescription, she did, however, charge him for the entire treatment which she administered for his "stomach trouble and blood poison."

A druggist, J. C. Opfer, in Waukon, testified that his drug store filled a prescription written by the appellant. Likewise, A. L. Grimm, another druggist in Waukon, testified that he had filled prescriptions written by the appellant. When testifying, J. C. Opfer, the druggist, also declared that the drugs contained in the prescription are found in the "National Formula." He also said that bismuth subcarbonate is found in the U. S. Pharmacopeia. Bismuth subcarbonate, the witness suggested, gives relief from distress of gas or hyperacidity. A. L. Grimm, the druggist above named, testified that baking soda purchased at the grocery stores, contains some alum and ammonia; while the chemically pure sodium bicarbonate used to fill prescriptions does not contain alum and ammonia. So too, this druggist declared that the three ingredients in the prescriptions given by appellant to her patients contained certain drugs included in the U. S. Pharmacopeia and "National Formula."

During the time in question, the appellant advertised herself at Waukon as an osteopathic *physician*. In effect, it was admitted by the appellant that she prescribed the drugs in question. Also she concedes that the drugs were prescribed as internal medicine. She makes two arguments at this juncture, however, to avoid the state's charge. They are: First, that the medicine administered was not curative; and, second, that she did not give the medicine to her patients for the purpose of effecting a cure, but rather to relieve pain or distress in the stomach. Section 2554 of the 1931 Code provides:

"A license to practice 'osteopathy' or 'osteopathy and surgery' shall not authorize the licensee to prescribe or give *internal curative medicines* and a license to practice 'osteopathy' shall not authorize the licensee to engage in major operative surgery."

Therefore, it is contended by the appellant that the above statute authorizes her as an osteopath to prescribe or give internal medicines if they are not curative. From that premise, the appellant concludes that she should not be enjoined under the state's petition because she did not prescribe or give the internal medicine above named to effect a cure but rather to relieve a distress in her patient's stomach.

The statute furnishes no definition for internal curative medi-

cines. It is argued by the state that formerly an osteopath could not prescribe or give medicines of any kind, and consequently the present law was changed in order to enable him to use external, as distinguished from internal, medicines. On the contrary, it is contended by the appellant that the statute, as now worded, authorizes an osteopath to prescribe and give internal medicines if such medicines are not curative. See State v. Cornelius, 200 Iowa, 309. This result must follow, the appellant declares, because the statute aforesaid is penal and therefore must be strictly construed. Effect must be given in the statute to the word "curative," appellant urges, and therefore under strict construction she says the statute means that an osteopath can administer any medicine that is not known to the medical profession as a "specific." If that is not true, the appellant maintains that at least the osteopathic profession can administer internal medicines as a relief from distress, as distinguished from a cure for an ailment. While thus administering internal medicines for the purpose of relief, the appellant suggests that she may use an ordinary household remedy for a simple condition of minor distress. Whether the rule requiring a strict construction of the penal statutes applies in the case at bar where an injunction is under consideration, we do not decide because this court in principle, when considering a criminal case where the strict construction rule applies, has disposed of the statutory construction involved adversely to the appellant's claim.

Our court, in State v. Gibson, 199 Iowa 177, declared that the words "internal curative medicine" in the statute are to be given not a technical meaning, but that they should be construed "according to their usual and ordinary meaning." Consequently the question of fact involved in the case at bar is not whether "the medicine prescribed was the best, or one most likely to effect a cure, or whether it would, in fact, cure the disease or affection for which it was given." State v. Gibson (199 Iowa 177). supra. The question to be determined in this case is. as that in the Gibson case was, "whether the defendant prescribed and administered internal curative medicine." State v. Gibson (199 Iowa 177), supra.

"The evident purpose of the legislature was to prohibit osteopathic physicians and surgeons from practicing medicine or professing to heal in any other way than by the method recognized and prescribed by their school, and as defined by the statute." State v. Gibson (199 Iowa 177), supra.

Giving to the words "curative medicine," then, their ordinary meaning according to the rule adopted by this court, as above indicated, what is meant by curative medicine? Surely the legislature did not intend to limit curative medicines to those medicines known under the law as specifics. There are only a few of them. By far the larger number of internal medicines are not specifics. An osteopath, according to the record, does not profoundly study pharmacology nor materia medica, but rather he studies the principles of osteopathy instead of materia medica, and osteopathic mechanics in lieu of pharmacology. Clearly, then, the legislature did not intend, as appellant claims, to confer upon the osteopath the right to prescribe or give all internal medicines except specifics. To construe the statute otherwise would do great violence to the manifest legislative intention.

On the other hand, it is quite conclusive that the legislature intended, when using the term curative medicine, to signify that defined as curative medicine in Webster's International Dictionary, State v. Gibson (199 Iowa 177). supra, and State v. Bresee, 137 Iowa 673. State v. Gibson, supra, defines curative in the following language, reading on page 179:

"The word 'curative' is defined by Webster as: 'Relating to, or employed in, the cure of diseases; tending to cure. A remedy.' The word 'cure' is defined by the same author as: 'Act of healing, or state of being healed; restoration to health from disease, or to soundness after injury. Means of the removal of disease or evil; that which heals; a remedy; a restorative.' Internal medicine is, therefore, some substance or preparation administered internally for the cure, removal, or healing of some disease or condition demanding medical treatment."

Likewise, in State v. Bresee (137 Iowa 673), supra, on page 678, this court defined medicine as:

" 'Any substance administered in the treatment of disease; a remedial agent; a remedy.' The fact that the substance so employed as a remedial agent may have value as a food, and have a tendency to build up and restore wasted or diseased tissue, will not deprive it of its character as a medicine if it be administered and employed for that purpose."

Webster's New International Dictionary gives the following definition for curative:

"Relating to, or employed in, the cure of diseases; tending to cure; a remedy."

Also Webster defines a remedy as follows:

"That which relieves or cures a disease; any medicine or application which puts an end to disease and restores health. That which corrects or counteracts an evil of any kind; a *corrective; counteractive;* reparation; cure." (Italics are ours.)

Hence, internal curative medicine, is, as said in State v. Gibson (199 Iowa 177), supra, reading on page 179:

"Some substance or preparation administered internally for the cure, *removal, or healing of some disease or condition* demanding medical treatment." (Italics are ours.)

The substance administered as internal medicine by appellant in the case at bar was made for the purpose of curing, removing, or healing some disease or *condition* demanding medical treatment. Whether the medicine administered was capable of curing the disease or removing the condition is quite immaterial. State v. Gibson (199 Iowa 177), supra. Such is true because the fact of prime importance is that the appellant did prescribe the curative medicine to remove a condition or cure a disease. State v. Gibson (199 Iowa 177), supra. Without doubt, under the record, the appellant gave the medicine in question with her treatment of the patient for "stomach trouble."

Sodium bicarbonate, bismuth subcarbonate, and magnesium oxide, according to Mr. Hare on Practical Therapeutics, have a therapeutic use and value. There is much in the evidence indicating that this was the use made of the drugs by appellant when she prescribed them for her patients. It is said, however, by the appellant, in contradiction of this suggestion, that she merely used the medicine to relieve, as distinguished from to cure, the patient. Her witnesses rather indefinitely testified that the drugs in question would not cure, but would only relieve. This testimony is based very largely on the osteopaths' theory of internal medicines. State v. Bonham, 161 Pac. 377 (Wash.); State v. Sawyer, 214 Pac. 222 (Ida); State ex rel. Finch v. Eustace, 233 Pac. 109 (Kans.); State

Board of Medical Examiners v. Baudendistel, 140 A. 886 (N. J.); State Board of Medical Examiners of New Jersey v. DeYoung, 140 A. 676 (N. J.).

These witnesses said nothing to overcome the state's contention concerning the use of the drugs actually made by appellant. Obviously, as shown by the record, she used the internal curative medicines as part of her treatment for the stomach trouble of her patients. That was in direct violation of Section 2554 of the 1931 Code, above quoted. By so using the drugs the appellant practiced medicine. The appellant thus practiced medicine at Waukon in an office open, and advertised to be open, to public patronage. She there prescribed for her patients internal curative medicines.

A treatment of human beings by another person "for the purpose of relieving" an ailment, with a public profession on the alleged doctor's part of ability to cure and heal, under the circumstances amounts to the practice of medicine. State v. Frutiger, 167 Iowa 550 (local citation 556). See People v. T. Wah Hing, 249 Pac. 229 (Cal.); People v. Mash, 235 Ill. App. 314; People v. Banks, 209 N. W. 935 (Mich.). By so concluding, we do not determine whether in any event an osteopath can or cannot suggest to a patient the use of ordinary home remedies, nor do we determine or indicate whether an osteopath may or may not under any circumstances use any drug for the mere relief of minor distress in the human being without violating the statute above named.

II. Section 2519 of the 1931 Code provides:

"Any person engaging in any business or in the practice of any profession for which a license is required by this title [Chapter 115, Title 8] without such license may be restrained by permanent injunction."

Preceding that provision of the statute are the following sections:

"2438. For the purpose of this and the following chapters of this title: * * *

"2. 'Licensed' when applied to a physician and surgeon, podiatrist, 'osteopath', 'osteopath and surgeon', chiropractor, nurse, dentist, dental hygienist, optometrist, pharmacist, practitioner of cosmetology, practitioner of barbering, or embalmer shall mean a person licensed under this title.

"3. 'Profession' shall mean medicine and surgery, podiatry, 'osteopathy'. 'osteopathy and surgery', chiropractic, nursing, dentistry, dental hygiene, optometry, pharmacy, cosmetology, barbering, or embalming."

"2439. No person shall engage in the practice of medicine and surgery, podiatry, 'osteopathy', 'osteopathy and surgery', chiropractic, nursing, dentistry, dental hygiene, optometry, pharmacy, cosmetology, barbering, or embalming, as defined in the following chapters of this title, unless he shall have obtained from the state department of health a license for that purpose."

Notwithstanding the foregoing provisions of the statute, it is argued by the appellant that an injunction in no event will lie to prevent her from practicing medicine illegally. Her contention is that under the circumstances the only remedy which the state has when she practices medicine without a license is to punish her under section 2522 of the 1931 Code, a criminal statute. This is true, the appellant contends, because she has a license to practice osteopathy. With a license to practice osteopathy, the appellant argues, she cannot be enjoined from practicing medicine without a license. Section 2519, above quoted, authorizing the injunction, and section 2522, previously named, fixing the penalty are under chapter 115 of the 1931 Code. Likewise, section 2439, previously quoted, is a part of said chapter 115. Said last named section of the Code requires a license before one may "engage in the practice of medicine." The practice of medicine there contemplated is allopathic medicine as distinguished from the practice of osteopathy. Hence, if an osteopath without a license to practice medicine does so, he is subject to a penalty under section 2522 above named.

On the other hand, however, such osteopath may be enjoined from engaging in the practice of medicine without a license under section 2519, previously mentioned. In other words, a license to practice osteopathy is not a license to practice medicine. An osteopath duly licensed may, of course, engage in that profession. But his license so to do does not entitle him to go beyond the boundaries of that profession and engage in some other for which another license is required. So, when the appellant is licensed to practice osteopathy but not licensed to practice medicine, and she nevertheless does so, then she as such practitioner engages in the practice of medicine without a license. State ex rel. Finch v. Eustace (233 Pac.

109 [Kans.]), supra; Board of Medical Examiners v. DeYoung (140 A. 676 [N. J.]), supra; State Board of Medical Examiners v. Baudendistel (140 A. 886 [N. J.]), supra.

Under the facts in the case at bar, then, the appellant did engage in the practice of medicine without a license. Therefore, she may be enjoined, under section 2519, from so doing. State v. Fray, 214 Iowa 53; State v. Howard, 214 Iowa 60.

III. As a further complaint against the judgment and decree of the district court, the appellant contends: First, that she was not engaged in the general practice of medicine at the time the decree was entered; and, second, that she had left Waukon, the place of her practice, before the decree, and that the acts complained of in the state's petition occurred almost a year before the decree.

Of course, at the time the district court entered its judgment and decree, it had jurisdiction of the appellant's person as well as the subject-matter involved in this controversy. According to the state's petition, the appellant at the time the pleading was filed had been, and was then, engaged "in the practice of medicine without a license." Possibly thereafter she may temporarily have left Waukon. There is nothing to indicate that she had permanently removed therefrom. Likewise, there may have been some interruption in the practice of her profession, yet it does not appear under the record that the appellant will desist from practicing medicine without a license in the state of Iowa unless enjoined.

A somewhat analogous question was discussed by this court in State v. Fray (214 Iowa 53), supra, reading on page 59:

"Some stress is laid by appellant upon the fact that the illegal acts charged against the defendant were all in the past * * * and that the complaint does not show any threatened act in the future. The complaint is drawn in the present tense. Such is the form of the statute. The complaint speaks as of the date of its filing, and continues to speak until the date of the decree. The purpose and effect of the injunction are to stop an alleged existing practice. When such existing practice is established, it will be presumed to be in accord with the intent of the perpetrator, and the practice and the intent will be presumed to continue until the contrary is made to appear. This is particularly so if the existing practice is in the nature of a nuisance and is a willful violation of law. The statutory right to an injunction in such case is not conditioned upon future

threats. The plaintiff is entitled to the injunction upon a showing of the existing practice; and this is so even though the defendant should suddenly desist, and should profess repentance and a purpose to desist for the future."

Under the entire record, then, it is apparent that the injunction was properly issued to restrain the appellant from practicing medicine without a license. The scope of the injunction is in accordance with the state's petition and the evidence furnished thereunder.

Wherefore, the judgment and decree of the district court is affirmed.—Affirmed.

STEVENS, C. J., and EVANS, BLISS, and CLAUSSEN, JJ., concur.