STATE OF IOWA, Appellant, v. W. P. MCPHEETERS, Appellee.

No. 41839.

JUNE 20, 1933.

REHEARING DENIED DECEMBER 14, 1933.

Edward L. O'Connor, Attorney-general, for appellant.

Sampson & Dillon, for appellee.

Gerald O. Blake, amicus curiae.

KINDIG, C. J.—On August 25, 1931, the state of Iowa, the plaintiff-appellant, filed a petition in the district court of Iowa, in and

for Polk county, charging that W. P. McPheeters, the defendant-appellee, an osteopath, gave, and administered, to patients internal curative medicines. It is said by the state that the appellee diagnosed the ailments of patients and assumed duties common to a physician and surgeon in the practice of medicine. While in argument it is said that the appellee otherwise violated the statutes relating to the practice of medicine, yet the petition for the injunction is limited to the matters above set forth. Consequently, our discussion will likewise be limited.

A trial was had in the district court under the petition above named and the appellee's answer denying the allegations thereof. After the trial in the district court, that tribunal found that the state had not proven the allegations of its petition, and accordingly denied the injunction. From the judgment entered upon that finding by the district court, the state appeals.

Section 2519 of the 1931 Code provides:

"Any person engaging in any business or in the practice of any profession for which a license is required by this title [eight] without such license may be restrained by permanent injunction."

That section of the Code is supplemented by other sections thereof providing for the licenses. These last-named sections are as follows:

"2438. For the purpose of this and the following chapters of this title [eight]: * * * 2. 'Licensed' when applied to a physician and surgeon, podiatrist, 'osteopath', 'osteopath and surgeon', chiropractor, nurse, dentist, dental hygienist, optometrist, pharmacist, practitioner of cosmetology, practitioner of barbering, or embalmer shall mean a person licensed under this title. 3. 'Profession' shall mean medicine and surgery, podiatry, 'osteopathy', 'osteopathy and surgery', chiropractic, nursing, dentistry, dental hygiene, optometry, pharmacy, cosmetology, barbering, or embalming. * * *

"2439. No person shall engage in the practice of medicine and surgery, podiatry, 'osteopathy', 'osteopathy and surgery', chiropractic, nursing, dentistry, dental hygiene, optometry, pharmacy, cosmetology, barbering, or embalming as defined in the following chapters of this title, unless he shall have obtained from the state department of health a license for that purpose."

As stated above, it is charged by the state in its petition for

the injunction that the appellee practiced medicine without a license. In other words, it is claimed by the state that the appellee, although licensed to practice osteopathy, went beyond the bounds of the privileges of his license so to do and entered the field of medicine. According to section 2538 of the 1931 Code, the following persons:

" * * * shall be deemed to be engaged in the practice of medicine and surgery: 1. Persons who publicly profess to be physicians or surgeons or who publicly profess to assume the duties incident to the practice of medicine or surgery. 2. Persons who prescribe, or prescribe, and furnish medicine for human ailments or treat the same by surgery. 3. Persons who act as representatives of any person in doing any of the things mentioned in this section."

Because of section 2539, in the same chapter, however, licensed osteopaths exclusively engaged in the practice of their profession are not deemed to be "engaged in the practice of medicine and surgery". Osteopaths, according to section 2548 of the Code, are:

"a. Persons publicly professing to be osteopaths or publicly professing to assume the duties incident to the practice of osteopathy. b. Persons who treat human ailments by that system of the healing art which places the chief emphasis on the structural integrity of the body mechanism as being the most important factor for maintaining the organism in health."

Under the second division of this section, osteopathic surgeons are:

"a. Persons publicly professing to be osteopaths and surgeons or publicly professing to assume the duties incident to the practice of osteopathy and surgery. b. Persons who treat human ailments by osteopathy and surgery."

Licensed physicians and surgeons, exclusively engaged in the practice of medicine and surgery, as defined in section 2538, supra, are not osteopaths or osteopathic surgeons under section 2548, supra. See section 2549 of the 1931 Code.

"The practice of medicine there contemplated is allopathic medicine as distinguished from the practice of osteopathy. Hence, if an osteopath without a license to practice medicine does so, he is subject to a penalty under section 2522" of the 1931 Code. State v. Stoddard, 215 Iowa 534, 541, 245 N. W. 273, 276.

A license to practice osteopathy or osteopathy and surgery, according to section 2554 of the 1931 Code, does not authorize the licensee to prescribe or give internal curative medicines, and a license to practice osteopathy does not authorize the licensee to engage in major operative surgery. See State v. Stoddard, 215 Iowa 534, 245 N. W. 273, supra. It becomes material, then, to determine in the case at bar whether the appellee prescribed or gave internal curative medicines. If he did so, the injunction prayed for in the state's petition should be granted. State v. Stoddard, 215 Iowa 534, 245 N. W. 273, supra.

According to the admissions of the appellee, he, as an osteopath, was engaged in the treatment of hemorrhoids by the interstitial infiltration method, using a solution of 95 per cent Wesson oil with 5 per cent phenol. This treatment was repeatedly administered by the appellee upon his patients. Did this treatment, thus administered by the appellee, then, amount to the prescribing or giving of internal curative medicines, as contemplated by section 2554 of the 1931 Code? The nature and description of the appellee's treatment of his patients was described by him as follows:

"Now the treatment usually is to push this (loose mucous membrane) all back and then insert a hypodermic needle, ordinarily put a small solution up there of oil which acts as a foreign substance and will cause that formation of white fibre foreign tissues, and normally has nothing to do with the veins. We get underneath the mucous membrane and hold it up, bring it up there to the original condition and the oil is a mechanical support. Stays there for an indefinite period of time, perhaps never comes out. It supports and stiffens the wall up like it originally was."

On cross-examination, the appellee further said concerning the purpose of the Wesson oil and phenol:

"It produces an irritation and inflammation, formation of adhesions and walls it off and supports and stiffens it and makes it normal."

During his examination, the appellee admitted that phenol is a common drug. Nevertheless the appellee denied that the drug is a curative medicine. Several witnesses testifying in appellee's behalf likewise declared that phenol is not a curative medicine. Also the appellee and his witnesses stated that the administering of

the drug applied by the appellee did not constitute the giving or prescribing of an internal medicine. These witnesses testified as osteopaths. Their statements were evidently influenced by the theory of osteopathy. An osteopath does not believe in curing patients by the use of curative medicines. In fact, he does not believe that medicines cure. Moreover, he does not study these medicines to the extent that the allopath does, and as an expert therefor ordinarily would have an opinion of lesser value than that of the allopath in the consideration of a curative medicine. On the other hand, Drs. Bierring, Parker, Harnagle, and Stoner, regular physicians and surgeons practicing medicine and surgery under licenses contemplated by section 2538 of the 1931 Code, testified that phenol is a medicine and that the use made of it by the appellee was the administering of such medicine internally. Some, if not all, of these doctors testified that the phenol thus administered internally by the appellee would be entirely absorbed by the human system. At least one of these doctors, if not all of them, declared that phenol is an internal curative medicine. As a matter of fact, under the appellee's own testimony, he used the phenol internally; that is, by the use of a hypodermic needle. He put the needle into the patient's body, and thereby administered the internal medicine. It is true, of course, that the appellee did not administer the phenol through the patient's mouth. In modern practice, the internal curative medicine is frequently administered to the patient, not through the mouth, but into another part of the body by the use of the hypodermic needle, or by some other process. So, in the case at bar, the appellee beyond any doubt administered the phenol to the patient internally. Phenol is an internal curative medicine, as indicated by the testimony of the state's doctors. Furthermore, according to Hare, on Practical Therapeutics, phenol is used internally for nervous vomiting, diarrhea, gangrene, and tuberculosis of the lung, diphtheria, ulcerated sore throat, enlarged glands, and other uses.

"Carbolic acid, or phenol, is a protoplasm poison which in dilute condition checks the growth of all microorganisms, and in strong concentration kills them, although it is far less active than some other antiseptics, such as sublimate. * * * Carbolic acid is caustic and produces local anaesthesia." Pharmacology and Therapeutics, by Poulsson.

According to the appellee's own testimony, he administered the

phenol internally for the purpose of setting up the counterirritation in the system near the hemorrhoid which he was treating. In other words, the appellee desired the counterirritant in the treatment of his patient, in addition to the ordinary manipulations of an osteopath. A cure of the ailment, according to the appellee's theory, might be found or at least assisted in the counterirritant. To produce the counterirritant the appellee administered phenol into his patient's system. As thus administered, the phenol was an internal curative medicine.

"Internal [curative] medicine is, as said in State v. Gibson, 199 Iowa 177, reading on page 179, 201 N. W. 590, 'Some substance or preparation administered internally for the cure, removal, or healing of some disease or condition demanding medical treatment.' " State v. Stoddard, 215 Iowa 534, 245 N. W. 273, supra.

Clearly, then, by thus administering the phenol, the appellee gave internal curative medicine to his patients. The appellee was not content to practice osteopathy according to the theory of that school, but he, for some reason, departed from the boundaries of osteopathy into the field of the practice of medicine. When the appellee, by the use of internal curative medicine, treated human beings for the purpose of relieving an ailment, with the public profession on his part of the ability to cure and heal, under the circumstances amounts to the practice of medicine. State v. Stoddard, 215 Iowa 534, 245 N. W. 273, supra. Under no condition would the appellee's license to practice osteopathy permit him to practice medicine. Before the appellee can practice medicine, it is necessary that he become licensed so to do. State v. Stoddard, 215 Iowa 534, 245 N. W. 273, supra; People v. Machado, 99 Cal. App. 702, 279 P. 228; Commonwealth v. Allison, 103 Pa. Super. Ct. 140, 156 A. 812; State Board of Medical Examiners of New Jersey v. De Young, 140 A. 676, 6 N. J. Misc. 231; State v. Miller, 59 N. D. 286, 229 N. W. 569; State v. Sawyer, 36 Idaho, 814, 214 P. 222; State ex rel. Finch, County Attorney, v. Eustace, 117 Kan. 746, 233 P. 109.

But the appellee did not have a license to practice medicine. So, in practicing medicine without the license, the appellee violated the statutes requiring such license. Hence, under the provisions of section 2519 of the 1931 Code, above quoted, the appellee may be restrained by a permanent injunction. Under the entire record, it is apparent that the injunction should have been issued by the dis-

trict court to restrain the appellee from practicing medicine without a license.

Because the district court did not thus enjoin him, the judgment and decree of that court must be, and hereby is, reversed—Reversed.

STEVENS, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.