**GEORGIA ASS'N OF OSTEOPATHIC PHYSICIANS & SURGEONS, Inc., et al. v. ALLEN, Collector of Internal Revenue.**
**No. 9466.**

Circuit Court of Appeals, Fifth Circuit.
May 28, 1940.

Orville A. Park, of Macon, Ga., and Carl N. Davie, of Atlanta, Ga., for appellants.

T. Hoyt Davis, U. S. Atty., and H. G. Rawls, Asst. U. S. Atty., both of Macon, Ga., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

An injunction was sought in the court below against the appellee to restrain him from refusing to permit osteopaths to register and distribute or administer narcotic drugs. This appeal is from a ruling denying the relief sought, and presents the single question: Are osteopaths in the state of Georgia entitled to register with the Collector of Internal Revenue, and to distribute or administer narcotic drugs under the Harrison Narcotic Act? The Collector has no discretion in the matter,[1] the facts not being in dispute.

Our decision is controlled by applicable Georgia statutes regulating the sale and purchase of narcotic drugs. 26 U.S.C.A. Int.Rev. Code, § 3220 et seq. The highest judicial tribunal of Georgia has not decided the exact question here involved, so we apply the law as we understand it to be in that state. Delong v. Jefferson Standard Life Ins. Co. 5 Cir., Feb. 19, 1940, 109 F.2d 585.

[1] Perry v. Larson, 5 Cir., 104 F.2d 728; Bruer v. Woodworth, D.C., 22 F.2d 577.

In 1907, the Georgia legislature enacted a statute forbidding the sale of narcotics, except on written order or prescription of a lawfully authorized practitioner of medicine, dentistry, or veterinary medicine. Ga. Code Ann. § 42-704. In 1935, the state enacted an act under the terms of which drugs could be sold to a physician, dentist, or veterinarian, or by an apothecary upon a written prescription of a physician, dentist, or veterinarian. It further provided that a physician or dentist, in good faith and in the course of professional practice, could prescribe, administer, and dispense narcotic drugs. Ga. Code Ann. § 42-802 et seq.

Appellants contend that they are "practitioners of medicine" within the meaning of the statute of 1907,[2] and "physicians" within the meaning of the law of 1935,[3] and that, under either classification, they are entitled to the relief sought. They cite the fact that osteopaths had always been registered and licensed to dispense drugs in the state of Georgia prior to the acts giving rise to this suit. They argue that their licenses authorize the practice of osteopathy "as taught and practiced in the legally incorporated and reputable colleges of osteopathy,"[4] and that the use of drugs is an integral and essential part of their professional work as so taught and practiced.[5]

■ The controlling Georgia statutes do not expressly include osteopaths among those legally empowered to dispense and administer narcotics. It is universally recognized that the indiscriminate sale or distribution of narcotics has vicious potentialities. Regulatory statutes in such cases must be construed so as to carry out the intention of the legislature. We think it is clear that the Georgia legislature did not intend to authorize osteopaths to use narcotic drugs in their practice.

■ Webster's New International Dictionary defines osteopathy to be a system of treatment based on the theory that diseases are chiefly due to deranged mechanism of the bones, nerves, blood vessels, and other tissues, and can be remedied by manipulation of these parts. The Georgia legislature has repeatedly classified the science of osteopathy as a non-drug-giving school of medical practice.[6] In the case of Bennett v. Ware, 4 Ga.App. 293, 61 S.E. 546, 549, the court construed the meaning of the phrase "practice of medicine," as used in the statute of 1907, supra, to be limited to prescribing or administering some drug or medicinal substance, or those means and methods of treatment for prevention of disease taught in medical colleges and practiced by medical practitioners. In this case, decided in 1908, the court classified osteopaths as being among those who "eschew the practice of medicine altogether." One year after this decision was published, the legislature first officially recognized the practice of osteopathy by providing for the issuance of licenses to osteopaths. It is apparent that an osteopath was not a physician or practitioner of medicine within the general acceptation of that term, or within the contemplation of the Georgia legislature, when the statutes were enacted. Cf. State v. McPheeters, 216 Iowa 1359, 249 N.W. 349; State Board of Medical Examiners v. Baudendistil, 140 A. 886, 6 N.J.Misc. 249; 46 Corpus Juris 1142.

It conclusively appears that the accepted meaning of the term "osteopathy," from the beginning of the science in 1874 far beyond the date of 1909 (which is controlling here), contemplated a drugless science of medicine. State v. Bonham, 93 Wash. 489, 161 P. 377, L.R.A. 1917D, 996. An examination of the history of the science indicates that osteopathy is the very antithesis of any science of medicine involving the

---

2 The Georgia Medical Practice Act defined the practice of medicine to mean holding oneself out to the public as being engaged in the diagnosis or treatment of disease, defects, or injuries of human beings, or the suggestion, recommendation, or prescription of any form of treatment for the intended palliation, relief, or cure of any such defect or ailment of any person, for compensation. Ga.Code 1933, Sec. 84-901.

3 This law defined a physician to be a person authorized by law to practice medicine in the state, and any other person authorized by law to treat sick and injured human beings in Georgia, and to use narcotic drugs in connection with such treatment.

4 Ga.Code Ann. § 84-1209 (1909).

5 The district judge found that osteopathic colleges of good repute, in 1909 and since, have taught and practiced the use of narcotics, and the chemistry and toxicology thereof, and that osteopaths could not carry on the general practice, as so taught and practiced, without the use of narcotics.

6 Ga.Acts of 1916, §§ 84-9918, 84-9919; Ga.Code Ann. § 84-906.

use of drugs. Bragg v. State, 134 Ala. 165, 32 So. 767, 58 L.R.A. 925; Catalogue of College of Osteopathic Physicians & Surgeons of Los Angeles, Cal., 1914-1915; Funk & Wagnalls' Dictionary; Bouvier's Law Dictionary, Rawle's Third Revision. Cf. Burke, Collector v. Kansas State Osteopathic Association, Inc., et al., 10 Cir., April 5, 1940, 111 F.2d 259.

The opinion of the Attorney General of Georgia reaches the same conclusion that we have expressed, which opinion is entitled to consideration in construing Georgia statutes. Perry v. Larson, 5 Cir., 104 F.2d 728.

Since a licensed osteopath in the state of Georgia is not authorized to purchase or dispense narcotic drugs, the judgment appealed from is affirmed.