The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Carzie ADAMS, Appellee.

No. 7758.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 4, 1966.

Rehearing Denied Oct. 25, 1966.

Cahill Hitt, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

Franklin Jones, Jr., Jones, Jones & Baldwin, Marshall, for appellee.

FANNING, Justice.

Appellee, Carzie Adams, brought suit against appellant insurance company, under the Workmen's Compensation Act, to recover monies spent for surgical treatment, medicines and hospital services incident to such treatment.

Trial was to the court without a jury. The trial court filed findings of fact and conclusions of law as follows:

### "FINDINGS OF FACTS AND CONCLUSIONS OF LAW

"1. On or about the 29th day of August, 1958, the Plaintiff, Carzie Adams, received a compensable injury while in the course and scope of his employment for Yates Construction Company and Yates Construction Company had Workmen's Compensation insurance with the Defendant.

"2. That as a result of such accidental injury the Defendant paid the Plaintiff Workmen's Compensation benefits, settled its claim with the Plaintiff, and left all future medical payments open to future determination of the accrual of benefits.

"3. That as a result of the injury of 1958, Plaintiff's condition became critical during the first half of 1965, and further medical and surgical treatment was necessary.

"4. That Plaintiff first demanded of Defendant that it furnish him medical and surgical treatment, and that Defendant refused to do so.

"5. That after so demanding, and after having filed a claim with the Industrial Accident Board of the State of Texas for surgical benefits and medical treatment, Plaintiff's condition, as a result of his previous compensable injury, became so grave that emergency surgery was necessary.

"6. That at all material times the Defendant refused to furnish any medical treatment of any nature whatsoever to the Plaintiff.

"7. That the Plaintiff obtained medical services and treatment at his own expense, all of which were necessary as a result of his previous injury, and that the charges for such medical and surgical treatment were in the aggregate amount of $1,318.30, and that all such charges were necessary, and the amounts charged were reasonable for the time and place where such services were rendered.

"8. That all jurisdictional prerequisites to confer jurisdiction upon this Court have been complied with by the Plaintiff.

## "CONCLUSIONS OF LAW

"1. That the Defendant is liable to Plaintiff in the sum of $1318.30 under the Workmen's Compensation Act of the State of Texas."

Additional findings and conclusions were requested, some were given, the others were refused; they are not set out here as they do not materially affect the main findings and conclusions set out above.

It is appellant's position under its points 1 through 4, that appellant was not legally required to provide all necessary surgical treatment, medicines and hospital services incident to the performance of such surgical treatment after the original claim for compensation (for injury received on Aug. 29, 1958) had been terminated by compromise settlement agreement made on April 20th, 1961.

This appears to be a case of first impression in Texas and we have found no authorities in point on the questions posed by appellant's contentions under its points 1 through 4. Sections 12e and 7 of Art. 8306, and Sec. 5 of Art. 8307, are the pertinent statutes to be considered.

Sec. 12e of Art. 8306, enacted in 1917, is found below.[1] Sec. 7 of Art. 8306, as

---

1. "Sec. 12e. In all cases where liability for compensation exists for an injury sustained by an employé in the course of his employment and a surgical operation for such injury will effect a cure of the employé or will materially and beneficially improve his condition, the association or the employé may demand that a surgical operation be had upon the employé as herein provided, and the association shall provide and pay for all necessary surgical treatment, medicines and hospital services incident to the performance of said operation, provided the same is had. In case either of said parties demands in writing to the board such operation, the board shall immediately order a medical examination of the employé in the same manner as is provided for in the section of this law relating to hernia. If it be shown by the examination, report of facts and opinions of experts, all reduced to writing and filed with the board, that such operation is advisable and will relieve the condition of the injured employé or will materially benefit him, the board shall so state in writing and upon unanimous order of said

amended in 1957, reads in part as found below.[2] Section 5 of Art. 8307, as amended in 1957, reads as found below.[3]

The term "medical aid" in its broad sense includes "surgical aid". The practice of medicine includes many branches and is a

board in writing, a copy of which shall be delivered to the employé and the association, shall direct the employé at a time and place therein stated to submit himself to an operation for said injury. If the board should find that said operation is not advisable, then the employé shall continue to be compensated for his incapacity under the general provisions of this law. If the board shall unanimously find and so state in writing that said operation is advisable, it shall make its order to that effect, stating the time and place when and where such operation is to be performed, naming the physicians therein who shall perform said operation, and if the employé refuses to submit to such operation, the board may order or direct the association to suspend the whole or any part of his compensation during the time of said period of refusal. The results of such operation, the question as to whether the injured employé shall be required to submit thereto and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the board in the same way as is provided in the case of hernia in this law. Acts 1917, p. 269."

2. "Sec. 7. *The association shall furnish such medical aid, hospital services, nursing, chiropractic services, and medicines as may reasonably be required at the time of the injury and at any time thereafter to cure and relieve from the effects naturally resulting from the injury.* Such treatment shall include treatments necessary to physical rehabilitation, including proper fitting and training in the use of prosthetic appliances, for such period as the nature of the injury may require or as necessary to reasonably restore the employee to his normal level of physical capacity or as necessary to give reasonable relief from pain, but shall not include any other phase of vocational rehabilitation. The obligation of the association to provide hospital services as herein provided shall not be held to include any obligation on the part of the association to pay for medical, nursing or surgical services not ordinarily provided by hospitals as a part of their services. If the association fails to so furnish reasonable medical aid, hospital services, nursing, chiropractic services and medicines as and when needed after notice of the injury to the association or subscriber, the injured employee may provide

said medical aid, nursing, hospital services, chiropractic services, and medicines at the cost and expense of the association. The employee shall not be entitled to recover any amount expended or incurred by him for said medical aid, hospital services, nursing, chiropractic services, or medicines, nor shall any person who supplied the same be entitled to recover of the association therefor, unless the association or subscriber shall have had notice of the injury and shall have refused, failed or neglected to furnish it or them within a reasonable time. At the time of the injury or immediately thereafter, if necessary, the employee shall have the right to call in any available physician, surgeon, or chiropractor to administer first-aid treatment as may be reasonably necessary at the expense of the association. * * *. As amended Acts 1957, 55th Leg., p. 1186, ch. 397, § 1."

3. "Sec. 5. Notwithstanding any other provision of this law, as amended, no award of the Board, and no judgment of the court, having jurisdiction of a claim against the association for the cost or expense of items of medical aid, hospital services, nursing, chiropractic services, medicines or prosthetic appliances furnished to an employee under circumstances creating a liability therefor on the part of the association under the provisions of this law, shall include in such award or judgment any cost or expense of any such items not actually furnished to and received by the employee prior to the date of said award or judgment. The first such final award or judgment rendered on such claim shall be res judicata of the liability of the association for all such cost or expense which could have been claimed up to the date of said award or judgment and of the issue that the injury of said employee is subject to the provisions of this law with respect to such items, but shall not be res judicata of the obligation of the association to furnish or pay for any such items after the date of said award or judgment. After the first such final award or judgment, the Board shall have continuing jurisdiction in the same case to render successive awards to determine the liability of the association for the cost or expense of any such items actually furnished to and received by said employee not more than six (6) months prior to the date of each such successive award, until the association shall have ful-

broad term. It of course includes surgery. "And as used in the Medical Practice Act, the terms 'physician' and 'surgeon' are also synonymous, and the terms 'practitioners', 'practitioners of medicine', and 'practice of medicine' are construed to refer to and include physicians and surgeons." 45 Tex.Jur.2d, p. 118.

In Words and Phrases, Vol. 40A, p. 468, Surgery, it is stated:

"Webster's Dictionary describes 'surgery' as a branch of medical science. It cannot be denied that practical surgery is ordinarily thus spoken of. U. S. v. Massachusetts General Hospital, 100 F. 932, 938, 41 C.C.A. 114."

In Words and Phrases, Vol. 26A, p. 616, Medical Treatment, it is stated:

"In construing a contract of a physician to furnish medical treatment, the court said: 'It appears from the evidence that medical treatment in its enlarged sense includes surgery, and in a restricted sense, as used in medical parlance, may mean a division of the curative art exclusive of surgery.' And the court held that the term in the contract, which was made with the officers of a county, was used in its broadest sense, and included services in surgical cases. County of Clinton v. Ramsey, 20 Ill.App. 577, 579, 20 Bradw. 577, 579."

In Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521, it was stated in part as follows:

"The term 'surgery' is not defined in the statute though technically it has a broad meaning. It does comprehend as suggested in Bellah some slight and simple procedures. It has been described as 'that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries.' Aetna Life Ins. Co. v. Orr, 205 Ark. 566, 169 S.W.2d 651, 654; State v. Eustace, 117 Kan. 746, 233 P. 109. Yet we are constrained to the opinion that as the term is used in the statute it refers to the common ordinary understanding of that word and as the art is practiced by a skilled surgeon. We think it would not be held generally to include mechanical application of weights and traction and other remedial devices, but embrace only cutting operations. * * *

"Finally, the insurer claims that the 1957 amendments have worked far-reaching changes in the compensation law and would render the testimony admissible from the effective date of these amendments though it was not admissible theretofore. Section 7 of Art. 8306 formerly had a specific limitation of 90 days from the date of the injury for 'medical attention, nursing or chiropractic services,' and a specific limitation of 180 days from the date of injury for hospital services. Effective September 1, 1957, as amended, this section now reads in part as follows: * * *

"Section 5 of Art. 8307 as amended now provides in part: * * *

"We are of the opinion that these two amendments in no way affect the question before us or operate to relax the rule. The Legislature has the power to expand the benefits of this Act in any way and to any extent that it may deem appropriate. That is what the Legislature has attempted to do by providing that even after a final award or judgment the Board has continuing jurisdiction to render successive awards against the Association for the cost of *medical aid* and *hospital services*. This may increase the

---

ly discharged its obligation under this law to furnish all such medical aid, hospital services, nursing, chiropractic services, medicines or prosthetic appliances to which said employee may be entitled; provided, each such successive award of the

Board shall be subject to a suit to set aside said award by a court of competent jurisdiction, in the same manner as provided in the case of other awards under this law. Paragraph added Acts 1957, 55th Leg., p. 1186, ch. 397, § 2."

carrier's liability and as claimed by it even result in payment of compensation for total and permanent disability when that condition has been remedied at the expense of the insurer and no longer exists. But even to avoid the latter result we are not at liberty to disregard the terms of the law as it is written by the Legislature and the necessary implications therefrom.

*"It is to be understood that we are not called upon here to interpret or construe these two 1957 amendments or to define the respective duties and obligations of the parties thereunder. All such questions are expressly reserved for consideration when and if they arise."* (Emphasis added.)

Should the term "medical aid" as used in Sec. 7 of Art. 8306, V.A.C.S., and in Sec. 5 of Art. 8307, V.A.C.S., be given a broad and liberal meaning so as to include "surgical aid" or should it be given a restricted meaning so as not to include cutting operations? There are of course many kinds of cutting operations, some of very minor nature and some of very serious nature, but all of them are designed for the purpose of curing or attempting to cure or heal the patient. We think some guidance on this question is furnished by the general rule that the Workmen's Compensation Act should be liberally construed so as to effectuate the beneficent purposes for which it was enacted. Travelers Insurance Company v. Hernandez, 5 Cir., 267 F.2d 267; Texas Employers Ins. Ass'n v. Andrews, 130 Tex. 502, 110 S.W.2d 49.

After carefully considering the questions raised by appellant's points 1 through 4, it is our best judgment that the three statutes above referred to (Art. 8306, Sec. 7, Art. 8306, Sec. 12e and Art. 8307, Sec. 5) should be harmonized and should be given a broad and liberal interpretation to effectuate the beneficent purposes for which the Texas Workmen's Compensation Act was enacted, and it should be held that the term "medical aid" includes "surgical

aid" as well, and that appellant was liable for the expenses of the operation under the record in this cause. Appellant's points 1 through 4 are overruled.

We further hold that the trial court properly held that appellee took all reasonable steps necessary to comply with Section 12e of Art. 8306, V.A.C.S., especially in view that under the circumstances appellee was justified in having the surgery performed on his own volition since it was an emergency operation.

On March 31, 1965, appellee wrote the Board demanding medical and surgical benefits. In this letter a report of Dr. Bywaters was enclosed indicating that surgery would materially improve appellee's condition. Nothing was done by the Board until April 6, and the Board instead of ordering a physical examination, after acknowledging receipt of appellant's letter and demand, stated to the effect that the Board did not have authority at that point to order surgery and suggested that appellee file a request with appellant insurance company for surgery, which request was refused by appellant. Being unable to get any affirmative action on his request to the Board and his request being denied by appellant and with appellee's condition becoming much worse, and with the pain "running him crazy" or words to that effect, on June 14, 1965, appellee had disc and back surgery on his own volition and upon the strong recommendation of his doctor. Appellee submitted the bills incurred in the surgical treatment and other expenses incident thereto, to the Industrial Accident Board of Texas and such Board held appellant not responsible for their payment. The jurisdictional requirements for bringing this suit were followed.

It has been held that in cases of emergency, compliance with the provisions of Section 12e of Art. 8306, V.A.C.S., is not a condition precedent to the employee's right to recover expenses of a surgical operation. Great American Indemnity Company v. Beaupre, Tex.Civ.App., 191 S.W.2d 883, wr. ref., n. r. e.; Ocean Accident & Guaranty

Corp. v. Nance, Tex.Civ.App., 25 S.W.2d 665, no writ.

Appellant's points 5 through 10 are overruled.

We further hold that there was evidence of probative force, and that the same was sufficient, to support the trial court's findings that the original injury was a producing cause of the difficulty which necessitated the operation sued upon, and that such operation was emergency in nature. Appellant's points 11 through 18 are overruled.

The judgment of the trial court is affirmed.