[Crim. No. 1832. Second Appellate District, Division Two.—July 2, 1929.]

THE PEOPLE, Respondent, v. MANUEL MACHADO, Appellant.

Shaeffer & Weldon for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and C. C. Ward, District Attorney, for Respondent.

CRAIG, J.—The appellant, an alleged chiropractor, appeals from a judgment convicting him of having violated the State Medical Practice Act, and from an order denying his motion for a new trial.

He was charged with having on or about February 19, 1929, wilfully and unlawfully practiced, advertised and held himself out as practicing, a system and mode of treating the sick and afflicted, and with having unlawfully diagnosed, treated, operated for and prescribed for the diseases, injuries, deformities and other mental and physical conditions of human beings, without then and there having a valid, unrevoked certificate of license from the board of medical examiners so to do.

It appeared that during the month of January, 1929, the defendant examined a three year old child which was brought to his office, diagnosed its disease as pneumonia and upon five or six consecutive days thereafter visited its home, where he prescribed and caused to be administered rhubarb and soda, a pharmaceutical preparation, and some pills. There was evidence also tending to show that he prescribed tincture of digitalis for a man on or about February 16, 1929, and other preparations for a woman and a boy about three months prior to the trial, all of whom he examined and diagnosed as cases requiring the treatments prescribed. Evidence relating to cases other than that first above mentioned was expressly admitted by the trial court for consideration by the jury solely upon the question of intent and motive, and the jury were thereafter so instructed. When upon the stand in his own behalf the defendant identified a certificate of license issued by the board of chiropractic examiners, issued in 1928, authorizing him to practice chiropractic, and a receipt showing payment of his annual license fee in 1929, and he testified that he had been receiving patients at his office "under the chiropractic act." Objections by the district attorney to the introduction of the certificate and receipt were sustained, upon the ground that they were irrelevant, incompetent and immaterial, and constituted no defense to a violation of the Medical Practice Act.

It is insisted on behalf of appellant that it was prejudicial error to reject this evidence, because it conveyed the impression to the jury that he was not a licensed chiropractor, and assumed that even so licensed, it was not a defense to a charge of illegally practicing a system or mode of treating the sick and afflicted as alleged in the information. By comparison of the two statutes, appellant attempts to urge as

a ground for reversal that the Chiropractic Act, being later in date of enactment, repealed the penal provisions of the Medical Practice Act, for the reason that in this respect they are conflicting. By section 17, chapter 354, of the Statutes of 1913 (p. 722), as amended, it was provided by the legislature that:

"Any person who shall practice or attempt to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this state, or who shall diagnose, treat, operate for, or prescribe for, any disease, injury, deformity, or other mental or physical condition of any person, without having at the time of so doing a valid unrevoked certificate as provided by this act, . . . shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than one hundred dollars ($100.00) nor more than six hundred dollars ($600.00), or by imprisonment for a term of not less than sixty (60) days nor more than one hundred and eighty (180) days, or by both such fine and imprisonment."

Sections 7, 15 and 18 of the Chiropractic Act (Stats. 1923, p. lxxxviii), in effect December 21, 1922, provide:

"One form of certificate shall be issued by the board of chiropractic examiners, which said certificate shall be designated 'License to practice chiropractic,' which license shall authorize the holder thereof to practice chiropractic in the State of California as taught in chiropractic schools or colleges; and, also, to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body, *but shall not authorize the practice of medicine, surgery,* osteopathy, dentistry or optometry, *nor the use of any drug or medicine now or hereafter included in materia medica.*"

"Any person who shall practice or attempt to practice chiropractic, . . . or any person who shall violate any of the provisions of this act, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than fifty dollars and not more than two hundred dollars, or by imprisonment in the county jail for not less than thirty days nor more than ninety days, or both."

"Nothing herein shall be construed as repealing the 'medical practice act,' of June 2, 1913, or any subsequent amendments thereof, except in so far as that act or said amendments *may conflict with the provisions of this act as applied*

*to persons licensed under this act,* to which extent any and all acts in conflict herewith are hereby repealed.''

■ It is at once obvious that there is neither real nor apparent ''conflict'' between the penal provisions of these statutes. The Medical Practice Act authorizes a properly qualified licentiate to practice medicine, as the practice of medicine is therein defined in detail, and makes it a misdemeanor to so practice without the prescribed license of the board of medical examiners. The Chiropractic Act authorizes one licensed thereunder to practice chiropractic in accordance with certain specified standards, but does not authorize its licentiates to practice medicine, nor does it denounce as a public offense the practice of medicine without a license therefor. The only misdemeanors of this nature, punishable under this latter act, consist of practicing chiropractic without a license from the board of chiropractic examiners, fraudulently bartering a certificate to practice, and the use by a licensed practitioner of a name, term or initials ''which would indicate that he or she was practicing a profession for which he held no license.'' Each statute defines offenses peculiar to its own sphere, and confines its penalties thereto. Appellant seeks to rely upon authorities holding that in the event of a conflict in the penal provisions of statutes applicable to the same offense, the more recent enactment repeals those of the statute preceding it, and from this it is argued that he should have been tried under the Chiropractic Act of 1923. However, since appellant was charged with an offense clearly violative of the Medical Practice Act of 1913, as amended, and to which the later statute obviously has no relation, to wit, practicing medicine without a license from the state board of medical examiners, there is no merit in this contention.

■ Certain bottles of medicines alleged to have been prescribed by the defendant as above mentioned were received in evidence over the objections of his counsel, and these rulings are also assigned as prejudicial error. It is not denied that appellant prescribed certain remedies, nor that the patients who received from him such prescriptions carried or sent them to a druggist, there had them filled, and took the contents of the bottles received from the druggist for the afflictions diagnosed by the defendant. It was also testified by a qualified chemist that he examined the

contents of these containers, which he found to be pharmaceutical preparations within the category of *materia medica.* It is appellant's contention, however, that there was no showing that the druggist furnished the drugs named in the prescriptions, nor that the medicines so taken by the patients, portions of which were so analyzed and produced in court, were the preparations which were actually prescribed. Briefly stated, the substance of this objection is that the druggist should have been called to prove that he did not substitute another and different drug for that prescribed. It is true, as contended, that in one instance the prescriptions were not connected with the defendant, but in the Nunez case, for which he was prosecuted, it appears that Machado both prescribed and personally left with the mother a mixture of rhubarb, soda, glycerine and spirits of peppermint, which, under his orders, was administered to a three year old child for a malady which he diagnosed as pneumonia. In another instance the defendant visited an aged man who then had and was taking digitalis under the directions of a physician; appellant examined him, pronounced the case doubtful, altered the dosage, but prescribed digitalis, which was continued. In another case the defendant stated to the patient that he should apply tincture of green soap and carbolated vaseline for eczema, wrote a prescription, which was filled at a drug-store and used as directed. A sample of this latter preparation, examined by the chemist, was pronounced a pharmaceutical preparation conforming to the prescription which Machado had indicated to the patient should be used, at the time of furnishing the written prescription which was exchanged with the druggist for the substance which the patient so applied and delivered to a special agent of the medical board. If there was error it was so slight that it was not prejudicial.

Nor was the defendant prejudiced by the failure of the district attorney to announce in advance upon which particular violation of the statute, intended to be proved, the People would rely for a conviction. The offense was alleged to have been committed on or about February 19, 1929, and evidence was offered which tended to show that the defendant had practiced medicine illegally, both in January and February of this year. Mrs. Joe Nunez and her son were first called, and professional visits, diagnosing and prescrib-

ing at their home was proved by them, although they were illiterate and did not remember dates, but believed these acts to have occurred in the month of January. As already observed, the People relied upon this instance, and the court announced that the prosecution would be bound thereby, and so instructed the jury. This was in compliance with previous decisions upon the subject. It is the better practice to make an election at the commencement of the trial, but if this be not done, and the district attorney makes an opening statement, the trial court should require ·that it be done at the close of such statement. (*People* v. *Williams*, 133 Cal. 165 [65 Pac. 323]; *People* v. *Barnett*, 15 Cal. App. 89 [113 Pac. 879].) However, it does not appear from the record that an opening statement was made, and under the circumstances the evidence first offered was properly deemed an election. (*People* v. *Williams, supra; People* v. *Harlan*, 29 Cal. App. 600 [156 Pac. 980].)

 It is next contended that the trial court erred in instructing the jury that if they found from the evidence to a moral certainty and beyond a reasonable doubt that the defendant was practicing, attempting to practice, or holding himself out as practicing, a system or mode of treating the sick and afflicted, the burden lay with him to prove that he had a valid, unrevoked certificate of license so to do. It is argued that as a chiropractor he was entitled to practice a system or mode of treating the sick and afflicted. This argument entirely overlooks the fact that the jury were instructed that the defendant was charged with having violated the state Medical Practice Act, in that he had unlawfully practiced a system or mode of treating the sick and afflicted, and had diagnosed, treated, operated and prescribed for diseases, injuries, deformities and other mental and physical conditions of human beings, without then and there having a valid, unrevoked certificate of license from the board of medical examiners of this state so to do. From our preceding review of the evidence it is obvious that Machado held himself out as practicing, and did practice, the system or mode of treating the sick and afflicted forbidden by the state Medical Practice Act, except as to those holding a certificate from the board of medical examiners. There is no evidence, nor is it claimed, that he had such a certificate, and the evidence of his guilt was ample. That

he may have been qualified and authorized to practice some other and different system or mode of treating human beings was no defense, and we do not conceive of any legal theory upon which it can be said that the jury were confused in this regard by the instructions of the court.

No other points are advanced which require discussion, and reversible error not appearing, the judgment and order denying a new trial are affirmed.

Thompson (Ira F.), J., concurred.

Works, P. J., being absent, did not participate in this opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 15, 1929.