[Civ. No. 9494. Third Dist. Apr. 6, 1959.]

GEORGE JACOBSEN, Appellant, v. BOARD OF CHIRO-PRACTIC EXAMINERS et al., Respondents.

Nathaniel S. Colley for Appellant.

Edmund G. Brown and Stanley Mosk, Attorneys General, and Willard A. Shank, Deputy Attorney General, for Respondents.

VAN DYKE, P. J.—Petitioner herein was charged with a violation of Section 10, subdivision (a) of the Chiropractic Act, an initiative act adopted in 1922 [Stats. 1923, p. lxxxv, Deering's Gen. Laws, Act 4811], which now appears as sections 1000-1 through 1001, Business and Professions Code [West's Annotated Codes]. By the decision of the board petitioner was found guilty of having violated said section 10, subdivision (a), by the following advertisement in the Sacramento Union:

"SICK?

"NERVOUS?

"RUN DOWN?

"For many years Dr. Jacobsen has specialized in the treatment of chronic ailments—the diseases that are said to be responsible for 93% of the ill health of the nation. The years of research and experience have enabled us to develop treating methods that are highly skillful and restful. Many patients have been successfully treated here which is your best insurance that we can do the same for you.

| | |
|---|---|
| Female Disorders | Sterility |
| Liver | Sleeplessness |
| Colon | Prostate |
| Stomach | Ulcers |
| Gall Bladder | Mental Upsets |
| Constipation | Piles |
| Backache | Rheumatism |
| Dizziness | Nerves |
| Headaches | Marital Problems |
| Depression | Lumbago |
| Frustration | Fears |
| Overweight | Glands |
| Rectal Disorders | Lack of Vigor |
| Skin Disorders | |

"LABORATORY AND PHYSICAL EXAMINATION

"If you are one of the thousands suffering from poor health you are invited to consult me and discuss your case freely without obligation. If I can help you I will frankly tell you so. Specialized treating methods and experience counts. Over 20 years in practice. . . ."

The charge was that by the said advertisement, petitioner "did advertise directly and indirectly, and in substance, that he, as the holder of a chiropractic license, would treat, cure, or attempt to treat or cure, any person, for loss of manhood, sexual weakness or sexual disorder, or any disease of the sexual organs, namely female disorders and sterility."

Section 10, subdivision (a) of the Chiropractic Act provides in part as follows:

"The board shall refuse to grant, or may suspend or revoke, a license to practice chiropractic in this State upon any of the following grounds, to wit:

". . . the advertising, directly, indirectly or in substance, upon any card, sign, newspaper advertisement, . . . that the holder of such license . . . will treat, cure, or attempt to treat or cure, any venereal disease, or will treat or cure, or attempt to treat or cure, any person afflicted with any sexual disease, for lost manhood, sexual weakness or sexual disorder or any disease of the sexual organs . . ."

The principal issue is whether the words "female disorders," "sterility" and "lack of vigor" as used by the petitioner in his advertisement come under the ban of section 10, subdivision (a), quoted above.

Petitioner, appellant here, contends that the specified words used do not come within the prohibition of the statute. He challenges the constitutionality of the relevant provisions of the section and, finally, he charges that the hearing officer committed error in refusing to admit certain proffered testimony.

Webster's New International Dictionary defines "chiropractic" as "A system, or the practice, of adjusting the joints, esp. of the spine, by hand for the curing of disease." The term itself is one of art, which makes use of "chiro," a Greek combining form meaning "hand." It is apparent that the electors in approving the initiative measure known as the Chiropractic Act believed that practitioners ought not to advertise concerning treatment of venereal disease, or sexual disease or disorder. The act did not forbid the actual treatment, but it was clearly intended that the licentiates should not be permitted to advertise that they would treat such ailments. The language is general, as is usual—even necessary—in such legislation. The terminology is that of common usage and appears to have been well selected to inform the voters as to just what was being forbidden. A clear intent to eliminate any subterfuge by the use of slightly differ-

ent verbiage having the same tenor is shown by the language which forbids such advertising, whether done directly, indirectly or in substance. Obviously, it was intended to wholly forbid the sort of "bait advertising" so often used to prey upon the weak and credulous by offering "cures" for sexual disorders, diseases or abnormalities. The advertisement published by appellant appears to us to be a crass attempt to evade the ban of the statute by indirection and subterfuge. The heart of the advertisement is a 27-item list of bodily organs and bodily ailments, with one or two social problems thrown in. Significantly, however, at the beginning, the middle and the end of the list, we find unmistakable references to what in common language may be termed sexual disorders, diseases and ailments. Although it seems to us that expert testimony was not needed to ascertain here the intent to evade the law and to indulge in the very sort of advertising which the law intended to prevent, nevertheless there was expert testimony introduced that the word "sterility" is primarily related to the function or lack of function of the male testes, that the term "loss of vigor" connotes sexual inability of the male, and that "female disorders" embrace various types of malfunction of the female sex organs. We hold that the appellant was properly found guilty of violating the law in that he did advertise that he would treat, and attempt to cure, loss of manhood, sexual weakness, sexual disorder and diseases of the sexual organs.

■ Appellant contends that section 10, subdivision (a) of the Chiropractic Act is not a valid constitutional enactment because (1) it is void for vagueness, and, (2) it unlawfully deprives appellant of his right to follow a lawful calling. As to the legislation being void for vagueness, we think little need be said as we have already stated the language used was properly that of common speech and common understanding. So far as the people who adopted the legislation are concerned, there is nothing of vagueness about it. Appellant attempts to create vagueness by reasoning that because any bodily ill-health or mental disturbance can affect sexual organs and functions, the legislation can be used to prevent any and all advertising offering to cure any malady. The legislation is not vulnerable to the attack made upon it. ■ A statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. ■ A statute must be definite enough

to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it. But a statute attacked for vagueness will be upheld if its terms may be reasonably certain by reference to its legislative purpose. (*People* v. *McCaughan*, 49 Cal.2d 409, 414 [317 P.2d 974].) The legislation under review meets the requirements of valid legislation as laid down by the Supreme Court in the McCaughan case. We think people of common intelligence would have no trouble in understanding what was proscribed.

 Generally on the right of a state to regulate professions affecting public health it has been held that a state may consistently with the requirement of due process regulate the practice of such profession by prescribing qualifications reasonably necessary and to that end may require licenses and establish supervision by an administrative board. (*Semler* v. *Oregon State Board of Dental Examiners*, 294 U.S. 608 [55 S.Ct. 570, 79 L.Ed. 1086].) In the Semler case, a statute making it grounds for the revocation of a dentist's license to practice if the licentiate advertised professional superiority, prices for professional service, or advertised by means of large display or glaring light signs, or advertised free dental work, or free examination, or any guarantee of any dental service, was upheld by the Supreme Court even against the challenge that such advertising must be permitted if it was in fact truthful. Said the court at pages 1089 and 1090 [79 L.Ed.] :

"The state court defined the policy of the statute. The court said that while, in itself, there was nothing harmful in merely advertising prices for dental work or in displaying glaring signs illustrating teeth and bridge work, it could not be doubted that practitioners who were not willing to abide by the ethics of their profession often resorted to such advertising methods 'to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them.' The legislature was aiming at 'bait advertising.' 'Inducing patronage,' said the court, 'by representations of "painless dentistry," "professional superiority," "free examinations," and "guaranteed" dental work' was, as a general rule, 'the practice of the charlatan and the quack to entice the public.'

"We do not doubt the authority of the State to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards

of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. . . .

"It is no answer to say, as regards appellant's claim of right to advertise his 'professional superiority' or his 'performance of professional services in a superior manner,' that he is telling the truth. In framing its policy the legislature was not bound to provide for determinations of the relative proficiency of particular practitioners."

Finally, appellant contends that the trial court erred in rejecting certain proffered evidence. At the hearing befor the board, appellant attempted to introduce about 60 advertisements of other chiropractors, which had appeared in newspapers throughout the state, and which used words similar to the words used by him. His purpose was to show the practice in the profession, arguing that thereby he could establish the standard exacted by the law. The offer was rejected. The fact that some 60 chiropractors out of the total number of licentiates in the state may have used advertising similar to that used by appellant does not establish a standard accepted by the law. While the interpretation of a statute by those to whom has been officially committed the duty of enforcing it is respected by the courts when the statute comes before them for construction, we know of no rule which says that the conduct of those whose activities are regulated by the statute can aid in its construction.

The judgment appealed from is affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council,