[Civ. No. 26230. Second Dist., Div. Two. Feb. 20, 1963.]

CREES et al., Plaintiffs and Appellants, v. CALIFORNIA STATE BOARD OF MEDICAL EXAMINERS et al., Defendants and Respondents.

196

198

Nathan Newby, Jr., for Plaintiffs and Appellants.

Behm & Callan and George W. Kell as Amici Curiae on behalf of Plaintiffs and Appellants.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, and Conrad Lee Klein, Deputy Attorney General, for Defendants and Respondents.

FOX, P. J.—This is an appeal by plaintiffs from a judgment in an action for a declaration of rights.

Plaintiffs are a California nonprofit corporation composed of practicing doctors of chiropractic and seven individual licentiates of the chiropractic board. They brought this action for declaratory and injunctive relief against defendants, who are the California State Board of Medical Examiners, five members of that board, the California State Board of Chiropractic Examiners and two members of that board. Plaintiffs sought to have certain rights, immunities, and privileges, claimed by plaintiff doctors of chiropractic under the Medical Practice Act (Bus. and Prof. Code, § 2000-2490) and the Chiropractic Initiative Act (West's Bus. & Prof. Code, §§ 1000, 1000-1 to 1000-19 [Deering's Bus. & Prof. Code, Appendix I, § 1 et seq.; Stats. 1923, p. xx; Deering's Gen. Laws, 1954, Act 4811], 1001), defined and declared. Plaintiffs also sought injunctions against the two defendant boards to enjoin them from interfering with said asserted rights.

A joint pretrial statement was prepared and signed by the parties. The pretrial judge, who was also the trial judge, made a pretrial conference order[1] modifying the pretrial statement and adopting portions of the pleadings. At the opening of the trial, stipulations were made: (1) That if called to testify the seven plaintiff doctors of chiropractic would each testify that each would in the practice of chiropractic perform the acts and use the drugs and medicines mentioned in the plaintiffs' contentions in the pretrial statement and would contend that the same was a part of chiropractic; and (2) That if the investigator for the California State Medical Board were called on the witness stand, he would testify that if plaintiffs did perform such acts and

---

[1] It was stipulated that the only issues to be determined by the trial court were those set forth in its pretrial conference order, any others being expressly waived.

use such drugs as set forth in plaintiffs' contentions in the pretrial statement, he would, on behalf of the board, investigate the same and ask the proper authorities for issuance of a criminal complaint based on such acts insofar as they would appear to violate the Medical Practice Act.

Defendants made a motion for judgment on the pleadings which was denied. Defendants then moved for a declaration of rights and duties of the parties based upon (1) the allegations of the complaint; (2) the answer thereto; (3) the pretrial order; and (4) the issues set forth in the pretrial order. Plaintiffs made several offers of proof involving proposed testimony primarily concerning practices in the science of chiropractic and present and past curricula at colleges of chiropractic. Defendant board of medical examiners objected to the offers of proof on the grounds of immateriality and irrelevancy. The objection was sustained. The court then granted the motion of defendants for a declaration of rights and duties of the parties. The court made findings of fact and conclusions of law, and gave judgment for defendants. The pertinent portions of the judgment are:

"It is Ordered, Adjudged and Decreed that the respective rights and duties of the parties are as follows:

"A. That an actual controversy exists between the plaintiffs and the defendants herein relating to their respective legal duties and rights.

"B. Section 2141 of the Business and Professions Code applies to plaintiff doctors of chiropractic and is not unconstitutional when applied to plaintiffs or any of them.

"C. Persons holding valid, unrevoked licenses from the Board of Chiropractic Examiners can be prosecuted under the State Medical Practice Act for violations thereof.

". . . . . . . . . . . . . .

"E. Duly licensed chiropractors who do not hold themselves out as physicians and surgeons, but only as 'doctors of chiropractic' or 'D.C.' may, nevertheless, be in violation of the State Medical Practice Act.

"F. Licensed chiropractors are not authorized by their license to use any drugs or medicines in materia medica or the dangerous or hypnotic drugs mentioned in section 4211 of the Business and Professions Code or the narcotics referred to in section 11500 of the Health and Safety Code for: (1) diagnosis; (2) as an aid in the practice of chiropractic; (3) for emergencies; or (4) for clinical research.

"G. Licensed chiropractors are not authorized by their license to practice obstetrics or to sever the umbilical cord in any childbirth or to perform episiotomy.

"H. A duly licensed chiropractor may only practice or attempt to practice or hold himself out as practicing a system of treatment by manipulation of the joints of the human body by manipulation of anatomical displacements, articulation of the spinal column, including its vertebrae and cord, and he may use all necessary, mechanical, hygienic and sanitary measures incident to the care of the body in connection with said system of treatment, but not for the purpose of treatment, and not including measures as would constitute the practice of medicine, surgery, osteopathy, dentistry, or optometry, and without the use of any drug or medicine included in materia medica.

"A duly licensed chiropractor may make use of light, air, water, rest, heat, diet, exercise, massage and physical culture, but only in connection with and incident to the practice of chiropractic as hereinabove set forth.

"I. It is true that chiropractic is not a static system of healing and that it may advance and change in technique, teaching, learning, and mode of treatment within the limits of chiropractic as set forth in paragraph H above. It may not advance into the fields of medicine, surgery, osteopathy, dentistry, or optometry.

"J. Plaintiffs have failed to state facts sufficient to constitute a cause of action for injunction against defendants.

"K. None of the plaintiffs are entitled to any injunctive relief against any of the defendants; defendants and their agents may proceed against plaintiffs in the event that plaintiffs exceed the scope of their respective licenses to practice chiropractic and violate the State Medical Practice Act."

Since the questions involved in this case are of fundamental importance to the health and safety of the public as well as to the profession of chiropractic, this court has granted the request of the California Chiropractic Association, which represents itself as having a membership of 600 practitioners of chiropractic, to submit a brief as amicus curiae.

Plaintiffs contend on appeal that the trial court erred in (1) refusing to permit introduction of evidence by plaintiffs in support of their contentions and claims; (2) granting the motion of defendants for a declaration of rights and duties of the parties based on the pleadings and stipulations;

(3) in making the declarations set forth in paragraphs B, C, E, F, G, H, J, and K of the judgment, *supra*; and (4) failing to make a declaration as to the meaning of the term "practice" as contained in the last part of section 7 of the Chiropractic Act. (West's Bus. & Prof. Code, § 1000-7 [Deering's Bus. & Prof. Code, Appendix I, § 7; Stats. 1923, p. xxii, § 7; Deering's Gen. Laws, 1954, Act 4811, § 7].)[2]

In addition, the amicus curiae cites as alleged error the failure of the trial court to refer questions of the extent and scope of chiropractic to the California State Board of Chiropractic Examiners before taking further action in the proceedings below.

### INTRODUCTION OF EVIDENCE

Plaintiffs base their contention that evidence concerning practices in the science of chiropractic and present and past curricula at colleges of chiropractic should have been heard by the trial court on section 1000-7 of the [West's] Business and Professions Code [Deering's Bus. & Prof. Code, Appendix I, § 7], which provides that a license issued by the Board of Chiropractic Examiners shall authorize the holder thereof "to practice chiropractic in the State of California *as taught in chiropractic schools or colleges. . . .*" (Italics added.) ██ They contend that to establish what is chiropractic, it is necessary, *inter alia,* to take extrinsic evidence as to what is and has been taught in chiropractic educational institutions, and the practices that have developed in the profession.

Their position, however, is not sustained by the prevailing authorities. Section 7 of the Chiropractic Act (West's Bus. and Prof. Code, § 1000-7 [Deering's Bus. & Prof. Code, Appendix I, § 7]) contains the only provision which undertakes either to define or describe chiropractic or to declare what is authorized by a license issued under the act. ██ The authorization is in two parts: (1) "to practice chiropractic . . . as taught in chiropractic schools or colleges"; and (2) "to use all necessary mechanical, and

---

[2]The pertinent portion of the section provides that the ". . . 'License to practice chiropractic' . . . shall authorize the holder thereof to practice chiropractic in the State of California as taught in chiropractic schools or colleges; and, also, to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body, but shall not authorize the practice of medicine, surgery, osteopathy, dentistry or optometry, nor the use of any drug or medicine now or hereafter included in materia medica."

hygienic and sanitary measures incident to the care of the body.''

The first part of this authorization, plaintiffs contend, authorizes the practice by a licensed chiropractor of anything that he has been taught in chiropractic schools.[3] As said in *People* v. *Fowler,* 32 Cal.App.2d Supp. 737, 745 [84 P.2d 326]: ''This is too broad an interpretation of the provision. It contains two expressions, each of which has a limiting, as well as an authorizing effect. The practice authorized must be 'chiropractic', and it must also be 'as taught in chiropractic schools or colleges'. Neither of these expressions can rule the meaning of the statute, to the exclusion of the other.''

The court pointed out (pp. 746-747) that there was a ''general consensus of definitions, current at and before the time the Chiropractic Act was adopted [which] shows what was meant by the term 'Chiropractic' when used in this act;'' also, that '' '[t]he words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted.' [Citations.] ''; and that '' [w]ords of common use, when found in a statute, are to be taken in their ordinary and general sense. [Citations.] '' The court explained that ''[t]he effect of the words 'as taught in chiropractic schools or colleges' is not to set at large the signification of 'chiropractic', leaving the schools and colleges to fix upon it any meaning they choose. Were the word 'chiropractic' of unknown, ambiguous or doubtful meaning, this clause . . . might serve to provide a means of defining or fixing its signification, but there is here no such lack of clarity. The scope of chiropractic being well known, the schools and colleges, so far as the authorization of the chiropractor's license is concerned, must stay within its boundaries; they cannot exceed or enlarge them. The matter left to them [the schools and colleges] is merely the ascertainment and selection of such among the possible modes of doing what is comprehended within that term, as may seem to them best and most desirable, and so the fixing of the standards of action in that respect to be followed by chiropractic licensees.''

---

[3]In support of their position plaintiffs rely heavily on dicta in *Evans* v. *McGranaghan,* 4 Cal.App.2d 202 [41 P.2d 937]. These dicta, however, never became the prevailing law. See comment on *Evans* in *People* v. *Fowler,* 32 Cal.App.2d Supp. 737 [84 P.2d 326] at p. 747 and authorities cited herein in support of our decision on this point.

■ The position of the court in *Fowler* relative to the asserted right to practice whatever is taught in chiropractic educational institutions finds support in the case of *In re Hartman*, 10 Cal.App.2d 213 [51 P.2d 1104]. At page 217 the court says: "While the section [section 7] contains the additional clause 'as taught in Chiropractic schools or colleges', the entire section must be taken as a whole and it cannot be taken as authorizing a license to do anything and everything that might be taught in such a school. . . . It is not sufficient that a particular practice is taught in such a school. Under the terms of the statute it must meet the further test that it is a part of chiropractic, whatever that philosophy or method may be, and further that it shall not violate the provision which expressly forbids the practice of medicine. If such a practice is not a part of chiropractic but does constitute the practice of medicine, it is not authorized under this license even though it may be taught in such a school.''

■ In *Fowler,* the court continues (p. 747) : "The second part of the authorization contained in section 7 of the act [West's Bus. and Prof. Code, § 1000-7 (Deering's Bus. & Prof. Code, Appendix I, § 7)], 'to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body', is not a definition of, but an addition to, [']chiropractic['] as used in the previous part of section 7 and authorizes chiropractors to use measures which would not otherwise be within the scope of their licenses.''

In sum, *Fowler* states (p. 748) : " [T]he chiropractor is limited to the practice of chiropractic and the use of mechanical, hygienic and sanitary measures incident to the care of the body, which do not invade the field of medicine and surgery, irrespective of whether or not additional phases of the healing art, including medicine and surgery or the use of drugs, may have been taught in chiropractic schools or colleges'' and, we should add, irrespective of whether any such additional phases have actually been used by some chiropractors illegally as part of professional treatment.

The principle enunciated in the *Fowler* case, *viz.,* that the ". . . general consensus of definitions, current at and before the time the Chiropractic Act was adopted, shows what was meant by the term 'chiropractic' when used in that act'' (*People* v. *Fowler, supra,* at 746), has been cited and fol-

lowed by the courts of this state through the intervening years. "[T]he limits of permissible practice by the holder of a chiropractic license . . . do not extend . . . beyond the scope of chiropractic as that term was understood and defined in 1922, and the ambitious attempts of chiropractic schools or colleges to extend them by teaching other subjects under the guise of chiropractic must fail, so long as the statute remains as it is now." (*People* v. *Mangiagli*, 97 Cal. App.2d Supp. 935, 939 [218 P.2d 1025]; see also *People* v. *Nunn*, 65 Cal.App.2d 188, 194-195 [150 P.2d 476].) "The terminology [of the 1922 initiative Chiropractic Act] is that of common usage. . . ." (*Jacobsen* v. *Board of Chiropractic Examiners*, 169 Cal.App.2d 389, 392 [337 P.2d 233].) "[T]he term 'chiropractic' includes only the meaning of that term as it was generally understood in 1922 when the Chiropractic Act was adopted." (*People* v. *Augusto*, 193 Cal. App.2d 253, 257-258 [14 Cal.Rptr. 284]; hear. den.)

This principle of the *Fowler* case has also been adopted by courts in other jurisdictions, which have also cited *Fowler* with approval. In *State* ex rel. *Wheat* v. *Moore*, 154 Kan. 193 [117 P.2d 598], the phrase "as taught and practiced in . . . colleges of oesteopathy" was involved. The Kansas Supreme Court stated (117 P.2d at 604): "The words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted . . . (*People* v. *Fowler, supra*.)" At the same page, the Kansas court also cites *Fowler* as a "well-considered" opinion for its distinguishing of various forms of the healing arts. One year earlier, in *Burke* v. *Kansas State Osteopathic Assn.* (1940) 111 F.2d 250, the Circuit Court of Appeals for the Tenth Circuit had dealt with the same question of construction as involved in the *Moore* case. In *Burke*, the federal court stated (p. 256): "[T]he mere fact that these subjects were taught in the osteopathic college is not evidence that the graduates of that college had a right to practice anything but osteopathy. In many of the leading schools of America today, the principles of communism, facisms [*sic*] and other isms inimical to our form of government are examined and discussed. Not that these schools desire their students to believe these isms but that the students may know what they are and discern between these objectionable theories of government and proper forms of government."

The Supreme Court of Wisconsin cited *Fowler* in *State* v.

*Grayson,* 5 Wis.2d 203 [92 N.W. 2d 272]. In that case, the court was called upon to rule with respect to a definition of "chiropractic" similar to that in *Fowler.* In holding the definition to be "fully consistent" with those found in dictionaries and encyclopedias, the court said (92 N.W. 2d at 277): "In *People* v. *Fowler* . . . a California intermediate appellate court was called upon to determine the meaning of the word 'chiropractic' . . . The court arrived at a definition very similar in scope to that [in this case] . . . We can perceive no clear cut legislative intent that . . . [the] definition [of 'chiropractic'] must . . . [be] so broad in scope as to permit every practice or procedure that may be taught in any chiropractic college."

In *Smith* v. *State Board of Medicine of Idaho,* 74 Idaho 191 [259 P.2d 1033] the Idaho Supreme Court cited *Fowler* as support for affirming a conviction of a "naturopath" for practicing medicine. *Fowler* and *In re Hartman, supra,* are cited by the Nebraska Supreme Court in *State* ex rel. *Johnson* v. *Wagner,* 139 Neb. 471 [297 N.W. 906], where the scope of "osteopathy" was in question. There, the court stated (p. 910): "The scope of osteopathy is well known and schools and colleges of osteopathy must stay within its boundaries, they cannot enlarge them. (*People* v. *Fowler* . . .)" The statute involved in *Wagner* contained the phrase "as taught in . . . Ostoepathic colleges . . ." The Nebraska court pointed out that "[t]he fact that branches of medicine and surgery may be taught to increase the knowledge of the student . . . will not warrant him to invade those fields on the theory that they constitute the practice of osteopathy." (*State* ex rel. *Johnson* v. *Wagner, supra,* at p. 910). See also *Lynch* v. *Department of Labor & Industries,* 19 Wn.2d 802 [145 P.2d 265] (citing *Fowler* at p. 270 [145 P.2d]); *State* v. *Boston,* 226 Iowa 429 [284 N.W. 143]; *State Board of Medical Examiners* v. *McHenery* (La.App.) 69 So.2d 592; *Commonwealth* v. *Zimmerman,* 221 Mass. 184 [108 N.E. 893, Ann. Cas. 1916A 858].

There is patently no merit in plaintiffs' claim that the practices that have developed in this profession are admissible in evidence to determine the acts and procedures they may properly perform under their chiropractic license. In *Jacobsen* v. *Board of Chiropractic Examiners* (1959) 169 Cal.App. 2d 389 [337 P.2d 233], a chiropractor was charged with violating the Chiropractic Act for advertising the cure of sexual

disorders. He sought to introduce some 60 similar advertisements of other chiropractors throughout the state. His purpose was to show the practice in the profession, arguing that thereby he could establish the standard exacted by law. The court, at page 395, held the offer was properly rejected and stated: ''[W]e know of no rule which says that the conduct of those whose activities are regulated by the statute can aid in its construction.''

From the foregoing, it is abundantly clear that the trial court's ruling on plaintiffs' proffered evidence was correct.

### PROCEDURE

There is no merit whatever in plaintiffs' apparent suggestion that the court erred in declaring the rights and duties of the parties on the basis of the pleadings, the stipulations, and the pretrial conference order. ''The propriety of adjudicating the respective contentions of the parties upon the pleadings in an action for declaratory relief by means of a motion for judgment on the pleadings is recognized and established in this state.'' (*Wilson* v. *Board of Retirement*, 156 Cal.App.2d 195, 201 [319 P.2d 426].)

### SECTION 2141, BUSINESS AND PROFESSIONS CODE[4]

 Plaintiffs fallaciously argue that section 2141, Business and Professions Code, does not apply to licensed chiropractors and that the possession of such a license is a complete defense to a charge of violating this section.[5] By its express provisions section 2141 makes it a misdemeanor for any person not holding a license issued by the Board of Medical Examiners to engage in or practice any system or mode

---

[4]Section 2141, Business and Professions Code, reads: ''Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this State, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor.''

[5]Plaintiffs rely heavily on *People* v. *Mills*, 74 Cal.App. 353 [240 P. 296]. But they interpret it too broadly. It does not hold that the possession of a chiropractic license is a defense to the performance of surgery or the practice of medicine. The opinion says (p. 357): ''. . . if a defendant [is] charged under section 17 of the Medical Practice Act and if it be found that he is following the system used by chiropractors [i.e. that he is practicing chiropractic], then his complete defense is the showing that he holds a certificate from the chiropractic board.''

of treating the sick or afflicted. However, at the general election of November 7, 1922, the people of this state approved the Chiropractic Act, which created the Board of Chiropractic Examiners with authority to issue licenses to practice chiropractic. (Chiropractic Act, § 7.) Plaintiffs' argument finds no support in the language in either the Chiropractic Act or the Medical Practice Act. The only effect of the enactment of the Chiropractic Act on the Medical Practice Act was to create a limited exception to the prohibition against practicing a healing art without a license from the Board of Medical Examiners; that a holder of a license to practice chiropractic may practice chiropractic (not medicine or surgery); and that is the limit of the exception. (*People* v. *Machado*, 99 Cal.App. 702, 706 [279 P. 228]; *People* v. *Augusto*, 193 Cal.App.2d 253, 257 [14 Cal.Rptr. 284]; *People* v. *Fowler, supra*, p. 742; *People* v. *Mangiagli, supra*, p. 938; *In re Hartman, supra*, p. 217; *People* v. *Nunn*, *supra*, p. 194.) In *Machado*, defendant, a chiropractor, was convicted of having violated the Medical Practice Act. He offered in evidence his chiropractic license. His offer was rejected on the ground the same was immaterial since the possession of a chiropractic license constituted no defense to a violation of the Medical Practice Act. This ruling was sustained on appeal (pp. 704-706). Reference to the statutes and the foregoing authorities demonstrates that there is no legal support for plaintiffs' argument, and that the trial court correctly declared "Section 2141 of the Business and Professions Code applies to plaintiff doctors of chiropractic" and that "[p]ersons holding valid, unrevoked licenses from the Board of Chiropractic Examiners can be prosecuted under the State Medical Practice Act for violations thereof."

VALIDITY OF SECTION 302 OF THE ADMINISTRATIVE CODE

█ In 1954 the Board of Chiropractic Examiners adopted a regulation[6] which purported to expand substantially the area of professional activity on the part of chiropractors and the means and facilities at their disposal in their practice of the healing art. The trial court held that this regulation was

---

[6]The regulation is found in title 16, chapter 4, of the California Administrative Code. It provides: "302. Definitions. (a) Practice of Chiropractic: The basic principle of chiropractic is the maintenance of structural and functional integrity of the nervous system. The practice of chiropractic consists of the use of any and all subjects enumerated in Section 5 and referred to any and all other sections of the act."

invalid insofar as it purported to alter or enlarge the scope of the practice of chiropractic under the Chiropractic Act. This decision is correct. (*People* v. *Mangiagli, supra; Duskin* v. *State Board of Dry Cleaners,* 58 Cal.2d 155 [23 Cal.Rptr. 404, 373 P.2d 468].) In *Mangiagli,* the court stated on rehearing (p. 943): " 'An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative [or initiative] enactment' [citations]." In *Duskin,* the court, in dealing with a regulation of another administrative agency, held: "Thus the regulation, . . . insofar as it attempted to enlarge the terms of the enabling statute, . . . is invalid." (P. 165.) This determination adequately disposes of the contention made in the brief of amicus curiae to the effect that "questions of the extent and scope of chiropractic" should have been referred to the Chiropractic Board for its consideration and recommendation to the court before it took final action. Furthermore, such a procedure would have been totally out of harmony with the principle of the separation of legislative and judicial powers.

MAY A CHIROPRACTOR WHO HOLDS HIMSELF OUT ONLY AS SUCH EVER BE GUILTY OF VIOLATING THE MEDICAL PRACTICE ACT?

Plaintiffs vainly challenge the declaration of the trial court that: "Duly licensed chiropractors who do not hold themselves out as physicians and surgeons, but only as 'doctors of chiropractic' or 'D.C.' may, nevertheless, be in violation of the State Medical Practice Act." This declaration is so obviously correct that it requires but brief comment. As previously pointed out a chiropractic license entitles the holder thereof to perform certain acts in the practice of his particular healing art; it does not, however, authorize him to perform acts or administer treatment beyond the scope of the authority conferred by his certificate. Specifically, one who, *inter alia,* "diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person" must have a license from the Board of Medical Examiners (Bus. and Prof. Code, § 2141). One who performs any of these acts or procedures without such a license is guilty of a misdemeanor (§ 2141). This is the practice of medicine, and section 7 of the Chiropractic Act provides that the "License to practice chiropractic . . . shall not

authorize the practice of medicine, surgery, . . ." It therefore follows that when a doctor of chiropractic does an act or performs a procedure forbidden by section 2141, Business and Professions Code, except by one holding a license under the Medical Practice Act, he violates said act even though he does not hold himself out as a doctor of medicine. It is the doing of an act that is forbidden by law that constitutes the criminal offense. As pointed out in *People* v. *Cantor*, 198 Cal.App.2d Supp. 843, 848 [18 Cal.Rptr. 363] : ". . . a violation of the Medical Practice Act is not absolved by a concurrent statement that the violator is not a doctor [citation]." There is nothing in *Ex parte Greenall*, 153 Cal. 767 [96 P. 804], on which plaintiffs rely, that is contrary to these principles.

DOES A LICENSE TO PRACTICE CHIROPRACTIC AUTHORIZE THE HOLDER THEREOF: (1) TO USE DRUGS OR MEDICINES: OR (2) TO PRACTICE OBSTETRICS, SEVER THE UMBILICAL CORD, OR PERFORM EPISIOTOMY?

The initial answer to this question is found in section 7 of the Chiropractic Act as adopted by the people at the general election in November 1922. That section provides that the "License to practice chiropractic' . . . shall not authorize the practice of medicine, surgery . . . nor the use of any drug or medicine now or hereafter included in materia medica." In this connection it is appropriate to point out that in the official argument presented to the voters prior to the November 1922 election, in favor of the adoption of the Chiropractic Act, it was stated that the proposed act "prohibits the use of drugs, surgery or the practice of obstetrics by chiropractors. . . ."[7] The official argument may be considered as an aid to an interpretation of an act. (*Beneficial Loan Society, Ltd.* v. *Haight*, 215 Cal. 506, 515 [11 P.2d 857] ; *People* v. *Fowler, supra*, pp. 744-745.) In *People* v. *Augusto*, 193 Cal.App.2d 253 [14 Cal.Rptr. 284], the court points out (pp. 257-258) that a chiropractor administers his treatment " '. . . with the hands, no drugs being administered.' [Citations.] " Thus it is crystal clear from the plain wording of the initiative act and the decisions in this state that a chiropractor is not authorized to use drugs or medicines and

---

[7]Argument of G. A. Lynch in Favor of Proposed Chiropractic Act; Ballot Pamphlet issued by Secretary of State for the November 7, 1922, election.

it was not intended that he should be so authorized. It is likewise equally clear that the holder of a chiropractic license is not authorized to perform surgery. The Chiropractic Act expressly so provides (§ 7), and the decisions so hold (*People v. Fowler, supra; People v. Nunn, supra*). In the *Nunn* case this court stated (p. 194): "By chapter 5, division II of the Bus. and Prof. Code a chiropractor cannot legally practice surgery." And the argument to the voters shows that it was not contemplated that chiropractors would be authorized under the initiative measure to practice surgery.

It will be recalled that section 7 of the Chiropractic Act also provides that a license to practice chiropractic shall not authorize the practice of medicine. It is apparent that these provisions do not authorize the practice of obstetrics,[8] the severance of the umbilical cord or the performance of an episiotomy.[9] These procedures all fall in the medical-surgical field (see, e.g., *In re Hartman, supra; People v. Nunn, supra*) which chiropractors may not invade.

In an effort to fortify their position, plaintiffs emphasize the portion of section 7 which provides that the holder of a license to practice chiropractic may "use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body . . ." But this language does not authorize either the use of drugs, medicines, the severance of tissues, or the practice of obstetrics. In this connection it should be noted that the last provision of section 7 (following the last quoted authorization) sets forth two very specific limitations: (1) that the license to practice chiropractic "shall not authorize the practice" of medicine or surgery; (2) "nor the use of any drug or medicine now or hereafter included in materia medica."

*In re Hartman, supra,* throws light on the aspect of our problem which deals with the use of all necessary mechanical,

---

[8] "Although childbirth is not a disease, but a normal function of women, yet the practice of medicine does not appertain exclusively to disease, and obstetrics as a matter of common knowledge has long been treated as a highly important branch of the science of medicine." (*Commonwealth v. Porn,* 196 Mass. 326 [82 N.E. 31, 13 Ann.Cas. 569].) The proponents of the Chiropractic Act in their argument to the people prior to the general election in 1922 did not dispute this proposition for they said the proposed act "prohibits . . . the practice of obstetrics by chiropractors." (See footnote 7, *supra.*)

[9] Webster's Third New International Dictionary (1961) at page 765 defines "episiotomy" as a "surgical incision of the vulvar orifice for obstetrical purposes during parturition."

and hygienic and sanitary measures incident to the care of the body. Hartman was convicted, *inter alia,* of practicing medicine without a license, i.e., injecting an antitoxin into a human for the treatment of cancer in violation of the Medical Practice Act. On appeal from his conviction he argued, among other things, that the possession and use of the hypodermic syringe and needle was an authorized measure ''incident'' to the care of the body. In rejecting this contention the court stated (p. 217) : ''We think this [hypodermic injection of antitoxin] cannot be held to be merely a measure incident to the care of the body within the meaning of that section both because that clause of the section refers to general hygienic and sanitary measures, even though mechanical, and not to the treatment of diseases and ailments, and because the section contains the further limitation that the authorization granted shall not extend to the practice of medicine or surgery.'' In *People* v. *Nunn, supra,* the late Presiding Justice Moore of this court pointed out (p. 194) that a chiropractor ''is limited to the use of mechanical hygienic measures incident to the care of the body which do not invade the field of medicine and surgery.'' From the foregoing it is apparent that the provision of section 7 of the Chiropractic Act authorizing a chiropractor to use mechanical, hygienic, and sanitary measures incident to the care of the body does not authorize him to practice obstetrics, sever the umbilical cord, or perform an episiotomy for this would be invading the field of medicine and surgery and this he may not do under the express provisions of said section.

Although the Chiropractic Act provides that a license to practice chiropractic does not authorize the use of ''any drug or medicine now or hereafter included in materia medica,'' plaintiffs nevertheless contend that a chiropractor may use such drugs or medicines for: (1) diagnosis; (2) as an aid in the practice of chiropractic; (3) for emergencies; or (4) for clinical research. But since a chiropractor is not authorized to use drugs and medicines at all, it follows that his license does not authorize him to use them in any of the above areas of his professional activities.

Finally, in this connection, plaintiffs contend that the substances normally included in materia medica are now excluded by reason of the adoption of section 13 to the Business and Professions Code by the Legislature in 1961. First, the court was not called upon by the pleadings or pretrial conference

order, and did not undertake, to determine the substances included in materia medica. Second, section 13 did not become effective until September 15, 1961. The judgment herein was signed and filed on September 8, 1961. Thus the section was not in effect when the case was tried and the judgment rendered. Obviously, therefore, the section could have no bearing on the judgment.

From the foregoing it is manifest that the court's declaration of the rights of the parties in paragraphs F and G of the judgment is correct.

Plaintiffs complain, however, that the effect of paragraph G of the judgment is to selectively limit the nature and types of diseases, ailments, and mental and bodily conditions which can be treated by licentiates of the Chiropractic Board. If the chiropractic profession desires to expand the scope of their professional activities so as to include the practice of obstetrics and the right to sever the umbilical cord and perform episiotomy they must turn to the people, from whom they received permission to exercise the privileges they now enjoy, for legitimation of these additional practices.

### DECLARATION OF SCOPE OF PRACTICE, AND ACTS AND PROCEDURES THAT A CHIROPRACTOR MAY PROPERLY PERFORM

In paragraph H of the judgment the court declared the scope and nature of the practice of the healing art that may be engaged in by one who holds a license to practice chiropractic, and the character of the acts that such a licentiate may perform and the procedures that he may adopt and use. Each aspect of this declaration of a licentiate's rights and privileges and limitations thereon finds adequate support in the statutes and cases cited, quoted from, and discussed herein. Plaintiffs' challenge to this declaration is essentially an attack on the principles upon which the declaration is based. Our previous discussion has demonstrated that each of these principles is sound. Further discussion of plaintiffs' attack on paragraph H would be largely repetitious and therefore unprofitable.

### CONSTITUTIONALITY OF SECTION 2141, BUSINESS AND PROFESSIONS CODE

 In attacking the constitutionality of section 2141, Business and Professions Code, plaintiffs made two basic contentions: (1) the section is vague; and (2) it reflects an invalid classification. The same contentions were raised last

year by plaintiff Dayan herein, after he had been convicted of violating section 2141. The federal District Court dismissed his petition for writ of habeas corpus. In affirming the judgment of dismissal the Ninth Circuit Court of Appeals adequately disposed of the invalid classification argument. The court stated: "We find his constitutional claims without merit. *California can define the limits of its professions, and we find nothing unreasonable in the statutory classifications or the California interpretations thereof. The statute has sufficient specificity.* [Citation.] And we find no lack of due process in the California proceedings." (*Dayan* v. *People of the State of California,* 293 F. 2d 46. (Italics added.)

There is no merit whatever in the contention that section 2141 is unconstitutionally vague. A reading of the section suggests that people of common intelligence would have no trouble in understanding what was proscribed. In *People* v. *Cantor,* 198 Cal.App.2d Supp. 843 [18 Cal.Rptr. 363], the defendant, a hypnotist, was convicted of practicing medicine without a license in violation of section 2141. On appeal he attacked the section as being too vague and uncertain. The court held, however (p. 852): "We find no vagueness or uncertainty in the words of section 2141; the argument of its unconstitutionality on that ground must fall." (Accord: *People* v. *Mangiagli, supra.*)

Plaintiffs also argue section 2141 is rendered vague because of the enactment of the Chiropractic Act creating a limited exception thereto. This is not sound. The creation of a defense or exception by section 7 of the Chiropractic Act to the enforcement of section 2141 does not make the basic prohibition found in section 2141 unconstitutionally vague. (See *Dayan* v. *People of the State of California, supra.*)

Plaintiffs also complain that a "constructive crime" has been built up by the courts with the aid of inference, implication, and strained interpretation. Such an argument is not here apposite. Section 2141 is sufficiently definite and certain, and requires no interpretation to bring a chiropractor practicing medicine or surgery within the scope of its prohibition. A holding that a chiropractor who performed surgery could not be prosecuted under section 2141 would distort the letter and purpose of the section. (Cf. *Newhouse*

v. *Board of Osteopathic Examiners,* 159 Cal.App.2d 728, 734-735 [324 P.2d 687].)

## Due Process

Plaintiffs argue that they are denied due process by the state's administration of the Medical Practice Act, especially section 2141, Business and Professions Code, and by the courts in their interpretation and application of that section. Neither of these issues was before the trial court[10] and no evidence relating thereto was offered by either side. ■ In this state of the record we are not called upon to consider plaintiffs' unsupported accusations of discrimination. But, argue the chiropractors, they have an "unconscionable burden" placed on them in attempting to prove their innocence of a charge of violating section 2141 because they must prove that they fall within an exception to the prohibition contained in that section. ■ The law is clear that ordinarily it is appropriate for the prosecution to rest upon proving that a person has committed a generally prohibited act, and that it is for the defense to assume the burden of proving some legal excuse or that the defense falls within an excepted class. Now, let us see if any "unconscionable burden" is placed on a licensed chiropractor to prove his innocence after the prosecution has presented evidence that the chiropractor has engaged in a healing art. First the defendant must prove that he holds a license to practice chiropractic. He can do this by simply offering in evidence a certificate of the officer in charge of the records of the Board of Chiropractic Examiners (Bus. and Prof. Code § 162) ; or a copy of the official directory of licentiates (Bus. and Prof. Code, §§ 112, 1001) ; or he could ask the court to take judicial notice of the issuance of his license (Code Civ. Proc., § 1875, subd. 3). He would then urge that the act of "healing" that the People had proved that he had performed was within the scope of his license, i.e., that it was chiropractic. He has then carried his burden, which is patently not an "unconscionable" one.

■ The burden of a chiropractor to prove his license and that he was acting within its authorization is no more "unconscionable" than is the burden of a defendant attempting

---

[10]Neither of these questions was mentioned in the Pretrial Conference Order, dated June 2, 1961. This order stated, *inter alia,* that "It is stipulated . . . that any issues raised in the pleadings which are not set forth in this pre-trial order are waived."

to prove self-defense, entrapment, or that he had no knowledge of the presence of narcotics in a car that he was driving. The burden on a chiropractor to prove that he falls within an exception to section 2141 is not such as to violate his constitutional right of due process. It is not at all comparable to that placed on the defendant in *People* v. *Tilkin*, 34 Cal. App.2d Supp. 743 [90 P.2d 148], on which plaintiffs rely.

## EQUAL PROTECTION OF THE LAW

Plaintiffs argue that if chiropractors can be prosecuted for violating section 2141, Business and Professions Code, but drugless practitioners cannot, then there is an unreasonable discrimination prohibited by constitutional considerations. The simple answer to this argument is that section 2141 applies to everyone—chiropractors, drugless practitioners, barbers, truck drivers, and everyone else.

Plaintiffs' argument is predicated upon a misconception of the significance of the decision in *Cooper* v. *State Board of Medical Examiners*, 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R. 2d 593]. Plaintiffs take the position that the *Cooper* case "holds that a drugless practitioner who is licensed by the Medical Board cannot be charged with a violation of section 2141 for practicing outside the scope of his license . . ." The case does not so hold. It involved an administrative proceeding before the Board of Medical Examiners where the sole question was the propriety of that board's revocation of Cooper's license as a drugless practitioner. There was no issue, nor was there any discussion by the court of Cooper's liability to criminal prosecution for violation of section 2141. The court did, however, approve the board's finding that Cooper had violated section 2141 by giving a blood transfusion since this was outside the scope of his license. The court stated (p. 250) : ". . . it appears that the administration of such transfusion by petitioner did constitute the practicing of a system of treating the sick or afflicted which petitioner's drugless practitioner's license did not authorize. (See *People* v. *Nunn*, 65 Cal.App.2d 188, 194-195 [150 P.2d 476].)"

In presenting their point plaintiffs say that all persons are entitled to "the protection of equal laws." In taking this position plaintiffs overlook the established principle that the Legislature may classify in the course of regulating different groups of persons, and that the classification will be sus-

tained unless it is found to discriminate unreasonably in favor of one group and against another. In each of the following cases one group within the healing arts challenged a statute on the ground that another group was receiving more favorable treatment, and that the classification resulted in unreasonable discrimination. In each case the equal protection challenge was rejected and the classification, based on different training or different types of practice, was upheld. (*Crane* v. *Johnson,* 242 U.S. 339 [37 S.Ct. 176, 61 L.Ed. 348]; *McNaughton* v. *Johnson,* 242 U.S. 344 [37 S.Ct. 178, 61 L.Ed. 352]; *Louisiana State Board of Medical Examiners* v. *Fife,* 162 La. 681 [111 So. 58, 54 A.L.R. 594] affd. per cur., 274 U.S. 720 [47 S.Ct. 590, 71 L.Ed. 1324]; *Williamson* v. *Lee Optical of Oklahoma,* 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563]; *Gamble* v. *Board of Osteopathic Examiners,* 21 Cal. 2d 215 [130 P.2d 382]; *Oosterveen* v. *Board of Medical Examiners,* 112 Cal.App.2d 201 [246 P.2d 136]; *In re Rust,* 181 Cal. 73 [183 P. 548]; *People* v. *Jordan,* 172 Cal. 391 [156 P. 451]; *Ex parte Bohannon,* 14 Cal.App. 321 [111 P. 1039].)

In the instant case plaintiffs practice "one school" of the healing art; drugless practitioners practice another. The training of the two groups is different; their respective practices of the healing art are not the same. It cannot therefore be said that providing separate classifications for the two professions and somewhat different regulations for each operates to discriminate unreasonably against chiropractors. In this connection it is appropriate to note that the members of each of these professions may not extend the nature and scope of their practice beyond that which is authorized by their respective licenses, and that any member of either group is subject to substantial detriment if he does so.

Plaintiffs are in no position to complain that the court erred in failing to make a declaration as to the meaning of the term "practice" as used in the last part of section 7 of the Chiropractic Act which reads: "but shall not authorize the practice of medicine, surgery, . . ." for the reason that they never requested such declaration and by stipulation contained in the pretrial conference order waived any issue not set forth "in this pre-trial order."

Since plaintiffs' request for injunctive relief is predicated upon a declaration that they have certain rights, im-

munities, and privileges under the Medical Practice Act and the Chiropractic Initiative Act and since in our opinion the trial court has correctly declared the law adverse to their contentions, it follows that the trial court properly denied injunctive relief.

It seems unnecessary to discuss certain collateral and incidental arguments that plaintiffs have made in their 112-page opening brief since they could not possibly affect the outcome of this case and such discussion would only serve to unduly extend this opinion.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied March 21, 1963, and appellants' petition for a hearing by the Supreme Court was denied April 17, 1963.